## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

DANIEL Z. CROWE; and OREGON CIVIL LIBERTIES ATTORNEYS,

Plaintiffs-Appellants,

vs.

OREGON STATE BAR, et al.

Defendants-Appellees.

## PLAINTIFFS-APPELLANTS' OPENING BRIEF

Appeal from the United States District Court for the District of Oregon
Case No. 3:18-cv-02139-JR, Hon. Michael H. Simon, presiding

**MILITARY DISABILITY LAWYER, LLC**
Luke D. Miller
1567 Edgewater St. NW
PMB 43
Salem, OR 97304
(800) 392-5682
luke@militarydisabilitylawyer.com

**Scharf-Norton Center for Constitutional Litigation at the GOLDWATER INSTITUTE**
Scott Day Freeman
Adam C. Shelton
500 E. Coronado Rd.
Phoenix, Arizona 85004
(602) 462-5000
litigation@goldwaterinstitute.org

*Attorneys for Plaintiffs-Appellants*

# CORPORATE DISCLOSURE STATEMENT

Undersigned counsel of record for Oregon Civil Liberties Attorneys,

certifies that Oregon Civil Liberties Attorneys does not have a parent corporation

and that no publicly held corporation holds 10% or more of its stock.

/s/ *Scott Day Freeman*
Scott Day Freeman
Adam C. Shelton
**Scharf-Norton Center for**
**Constitutional Litigation**
**at the GOLDWATER INSTITUTE**
*Attorneys for Appellants*

# TABLE OF CONTENTS

Corporate Disclosure Statement ............................................................. i

Table of Contents ................................................................................. ii

Table of Authorities .............................................................................iv

Jurisdictional Statement ....................................................................... 1

Statement of Issues ............................................................................... 1

Statement of the Case ........................................................................... 2

    A. "Integrated" or "mandatory" state bar associations. ............................. 3

    B. Oregon's mandatory bar. ...................................................................... 4

    C. OSB's *Bar Bulletin* has published nongermane materials—funded by dues taken from nonconsenting attorneys. .................................................. 5

    D. OSB's lobbying for changes to Oregon's Laws was and is non-germane activity. ........................................................................................................ 7

        1. Nongermane legislative activity during the 2021 legislative session. ............................................................................................... 9

        2. Nongermane Legislative Activity During the 2019 Legislative Session. ............................................................................................. 13

        3. Nongermane legislative activity during the 2018 legislative session. ............................................................................................. 15

    E. Plaintiffs' injuries ............................................................................... 15

    F. Plaintiffs' claims and procedural history. ........................................... 16

Summary of Argument .......................................................................... 18

Argument ............................................................................................... 21

I.  Standard of Review ........................................................................21

II. The Supreme Court's decision in *Janus* clarifies the application of *Keller's* germaneness test. ........................................................................22

III. As OSB engages in nongermane activity both with its *Bar Bulletin* and its legislative activity, compelled association with OSB fails exacting scrutiny. ........................................................................27

    A. Statements in OSB's *Bar Bulletin* are nongermane and therefore fail exacting scrutiny. ........................................................................28

    B. OSB engages in significant legislative activity, of which some at least is nongermane and therefore the compelled association fails exacting scrutiny. ........................................................................31

    C. Whether a particular activity is germane or nongermane is a question of law, not fact. ........................................................................34

    D. OSB's complained of actions are not narrowly tailored to the recognized government interest in regulating the legal profession or improving the quality of legal services in the state. ........................34

IV. No "Major Activity" standard governs whether the OBA's constitution violations are excusable. ........................................................................36

Conclusion ........................................................................38

Certificate of Compliance ........................................................................39

Certificate of Service ........................................................................40

Statement of Related Cases ........................................................................41

Addendum ........................................................................42

**TABLE OF AUTHORITIES**

**Cases**

*Abood v. Detroit Board of Education*, 431 U.S. 209 (1977) ....................................19

*Ams. for Prosperity Found. v. Bonta*, 141 S. Ct. 2373 (2021) ...............................34

*Animal Legal Def. Fund v. FDA*, 836 F.3d 987 (9th Cir. 2016)...........................21

*Cohen v. California*, 403 U.S. 15 (1971)...................................................................36

*Crowe v. Oregon State Bar*, 989 F.3d 714 (9th Cir. 2021) ("*Crowe I*") 1, 17, 19, 23

*Crowe v. Oregon State Bar*, No. 3:18-cv-2139-JR, 2023 WL 1991529 (D. Or. Feb. 14, 2023 (*Crowe II*) ...........................................................................................22

*Harris v. Quinn,* 573 U.S. 616 (2014) ...................................................................24

*In re Petition for a Rule Change to Create A Voluntary State Bar of Neb.,* 841 N.W.2d 167 (Neb. 2013) ...........................................................................................4

*Janus v. AFSCME*, 138 S. Ct. 2448 (2018) ................................................... passim

*Jarchow v. State Bar of Wis.,* 140 S. Ct. 1720 (2020) ................................................3

*Keller v. State Bar of California*, 496 U.S. 1 (1990) ..................................... passim

*Knox v. SEIU*, 567 U.S. 298 (2012)................................................................. 19, 24

*L.F. v. Lake Wash. Sch. Dist.*, 947 F.3d 621 (9th Cir. 2020).................................21

*Lathrop v. Donohue*, 367 U.S. 820 (1961) ...................................................... 17, 18

*Lee v. Weisman*, 505 U.S. 577 (1992) .....................................................................36

*Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525 (2001) ...........................................36

*McDonald v. Longley*, 4 F.4th 229 (5th Cir. 2021) ........................................ passim

*Roberts v. U.S. Jaycees*, 468 U.S. 609 (1984) ................................................. 23, 24

*Sch. Dist. of Abington Twp. v. Schempp*, 374 U.S. 203 (1963) ...............................36

*Schell v. Chief Justice & Justices of the Oklahoma Supreme Court*, 11 F.4th 1178
  (10th Cir. 2021)............................................................................................. 22, 23

*Thompson v. Hebdon*, 909 F.3d 1027 (9th Cir. 2018) ............................................26

*United States v. United Foods, Inc.*, 533 U.S. 405 (2001) .....................................36

*W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624 (1943) ........................... 29, 36

*Wallis v. Princess Cruises, Inc.*, 306 F.3d 827 (9th Cir. 2002) ..............................21

*Yim v. City of Seattle*, 63 F.4th 783 (9th Cir. 2023) ................................................22

**Statutes**

28 U.S.C. § 1291 ........................................................................................................1

28 U.S.C. § 1331 ........................................................................................................1

28 U.S.C. § 1343 ........................................................................................................1

42 U.S.C. § 1983 ........................................................................................................1

Cal. Bus. & Prof. Code § 6001 .................................................................................26

Cal. Bus. & Prof. Code § 6031.5 ..............................................................................26

Cal. Bus. & Prof. Code § 6056 .................................................................................26

ORS § 9.010(2) ...........................................................................................................4

ORS § 9.080(1) ...........................................................................................................4

ORS § 9.114 ................................................................................................................5

ORS § 9.160................................................................................................... 4, 15, 16

ORS § 9.210 ................................................................................................................5

ORS § 9.490 ................................................................................................................5

**Rules**

Civil Rules of Civil Procedure 12(b)(6) .......................................................... 17, 23

Federal Rule of Appellate Procedure 4(a)(1)............................................................1

Federal Rules of Civil Procedure 12(b)(1) ...........................................................17

**Other Authorities**

Leslie C. Levin, *The End of Mandatory State Bars?*, 109 Geo. L.J. Online 1 (2020) ............................................................................................................3, 26

Marilyn Cavicchia, *Newly Formed California Lawyers Association Excited to Step Forward,* ABA Journal (Apr. 30, 2018) ...............................................................4

Ralph H. Brock, *"An Aliquot Portion of Their Dues": A Survey of Unified Bar Compliance with Hudson and Keller*, 1 Tex. Tech J. Tex. Admin. L. 23 (2000) ..3

## JURISDICTIONAL STATEMENT

Plaintiffs-Appellants Crowe and Oregon Civil Liberties Attorneys brought this case against the Oregon State Bar and several of its officials, in their official capacities, under 42 U.S.C. § 1983, seeking relief for violations of their free speech and association rights. The district court therefore had subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343. This Court has jurisdiction over this appeal under 28 U.S.C. § 1291 because Plaintiffs-Appellants seek review of a final decision of the district court that disposed of all the parties' claims.

This appeal is timely. The district court entered judgment and an order dismissing Plaintiffs-Appellants' claims in full on February 15, 2023. ER.002–13. Plaintiffs then filed this appeal on March 15, 2023, within the 30-day limit provided by Federal Rule of Appellate Procedure 4(a)(1). ER.034.

## STATEMENT OF ISSUES

As in its previous appearance before this Court (989 F.3d 714 (9th Cir. 2021)), this case presents several important questions left open by the Supreme Court in *Keller v. State Bar of California*, 496 U.S. 1 (1990), and *Janus v. AFSCME*, 138 S. Ct. 2448 (2018).

1. In *Janus*, the Supreme Court held that laws that require a person to subsidize a private organization's political or ideological speech are subject to "exacting" First Amendment scrutiny. Oregon law compels attorneys to become

members of OSB and to fund it, as a condition of practicing law. Did the district court therefore err in failing to apply exacting scrutiny and in examining whether OSB engaged in nongermane activity?

2. Did the District Court err in concluding that the two April 2018 *Bar Bulletin* articles criticizing President Trump were either nongermane or not enough of a "major activity" to rise to the level of a constitutional violation?

3. Did the District Court err in concluding that *all* of OSB's legislative activity alleged to be nongermane by Appellant was germane?

Appellant seeks declaratory and injunctive relief—to have Oregon's current mandatory bar scheme declared unconstitutional and enjoining enforcement of the current mandatory bar scheme.

## STATEMENT OF THE CASE

Daniel Crowe is a lawyer, and he wants to practice law in Oregon. But he does not want to associate with the political opinions of the Oregon State Bar (OSB). And neither do the members of Oregon Civil Liberties Attorneys (ORCLA). Unfortunately, state law *requires* Crowe and ORCLA members to associate with, and to fund, OSB's political activity as a condition of practicing law in Oregon.

This lawsuit challenges Oregon's requirement that attorneys join OSB to practice law in Oregon when OSB engages in nongermane conduct, including nongermane political lobbying.

### A.    "Integrated" or "mandatory" state bar associations.

State bar associations generally come in two types: mandatory and voluntary. Mandatory bars—also known as integrated bars—require attorneys to join the association and pay mandatory dues as a condition of practicing law in the state. *Keller v. State Bar of Cal.*, 496 U.S. 1, 4–5 (1990). This, of course, burdens the First Amendment rights of attorneys. *McDonald v. Longley*, 4 F.4th 229, 245 (5th Cir. 2021); *see also Keller*, 496 U.S. at 12 (stating that mandatory bar associations can burden First Amendment rights in a way analogous to "agency-shop" arrangements burdening rights of union members). Voluntary bar associations come with no such requirements and impose no such burden. *See Jarchow v. State Bar of Wis.,* 140 S. Ct. 1720, 1720 (2020) (Thomas, J., dissenting from denial of certiorari). Thirty-one states and the District of Columbia have mandatory bars; most of the others have voluntary bar associations. *See* Leslie C. Levin, *The End of Mandatory State Bars?*, 109 Geo. L.J. Online 1, 2 (2020); *see also* Ralph H. Brock, *"An Aliquot Portion of Their Dues": A Survey of Unified Bar Compliance with Hudson and Keller*, 1 Tex. Tech J. Tex. Admin. L. 23, 24

(2000).[1] Voluntary bar states include such highly populous states as California, New York, and Illinois, where lawyers are regulated directly without requiring membership in a bar association. *See In re Petition for a Rule Change to Create a Voluntary State Bar of Neb*., 841 N.W.2d at 171.

## B. Oregon's mandatory bar.

Oregon law compels every attorney in Oregon to join its integrated bar association, OSB, before he or she can practice law. ORS § 9.160; ER.339 ¶ 26. OSB is a "public corporation and an instrumentality of … the State." ORS § 9.010(2). OSB's executive functions are overseen by its Board of Governors, which is tasked with "direct[ing] its power to the advancement of the science of jurisprudence and the improvement of the administration of justice." ORS § 9.080(1); ER.337 ¶ 20. The Board has broad authority to "adopt, alter, amend and repeal bylaws and to adopt new bylaws containing provisions for the regulation

---

[1] Since this article's publication, California has adopted a bifurcated system under which lawyers pay only for purely regulatory activities and are not forced to fund the bar association's political or ideological speech, eliminating most if not all of the First Amendment problems. *See* Marilyn Cavicchia, *Newly Formed California Lawyers Association Excited to Step Forward,* ABA Journal (Apr. 30, 2018), available at https://bit.ly/2LEYNg0. Nebraska also adopted a bifurcated system in 2013 but then made its bar association fully voluntary. *See In re Petition for a Rule Change to Create A Voluntary State Bar of Neb.,* 841 N.W.2d 167, 173 (Neb. 2013); Neb. S. Ct. Rule 3-100(B) (amended effective February 12, 2020, to require payment of an annual assessment to the Nebraska Supreme Court rather than the Nebraska State Bar Association).

and management of the affairs of the state bar not inconsistent with law," and is the final policy maker regarding how OSB functions. *Id.*

Under the oversight of the Oregon Supreme Court, OSB administers bar exams, investigates applicants' characters and fitness, formulates and enforces the rules of professional conduct, and establishes minimum continuing legal education requirements for Oregon attorneys. ORS §§ 9.210, 9.490, 9.114. But OSB also engages in other activities. It publishes its *Bar Bulletin* and engages in extensive legislative and public policy activities. ER.067 § 11.1; ER.340 ¶¶ 35–36.

### C. OSB's *Bar Bulletin* has published nongermane materials—funded by dues taken from nonconsenting attorneys.

In the April 2018 edition of the *Bar Bulletin*, OSB published statements condemning white nationalism in terms designed to insinuate that Americans who voted for or support Donald Trump are racists and violent. ER.341 ¶¶ 42–43 & ER.323 ¶¶ 42–43; ER.350–51 (Ex. A to Compl.). These statements appear on two facing pages, with a common border and format making them appear as one message.

OSB's President and other OSB officials signed below the message on the first page, which alleges a rise in white nationalism and a normalization of racism and violence, and condemns the "proliferation" of speech that incites violence. These statements also emphasize OSB's support for the "specialty bars"

throughout Oregon, including those that joined in solidarity with OSB and the "unified bar." *Id.*

The facing page is titled "Joint Statement of the Oregon's Specialty Bar Associations." The statements that follow reference and explicitly support OSB's preceding message, and likewise condemn an alleged rise in the white nationalist movement, attributing that rise to then-President Trump. ER.350–51. Specifically, the statements alleged that President Trump catered to the white nationalist movement and cited multiple comments by President Trump that allegedly supported the accusation of racism. *Id.* In fact, the longest of the four paragraphs in the statement was dedicated almost entirely to criticizing then-President Trump. *Id.*

Plaintiff Crowe objected to these statements because they were political, especially considering the circumstances under which the statements were made. ER.088 at 28:14–29:8. He also testified that each of the two statements were nongermane, ideological speech. ER.096 at 58:10–24.

OSB admits that the formatting of the two statements was common and that only the first statement—that signed by OSB officials—was "vetted" for compliance with *Keller*'s germaneness requirement. ER.236 at 132:5-33:17. OSB also admits that it published the second statement without "vetting" it for *Keller* compliance, even though the two statements build upon each other and are part of a single "unified" statement by OSB. *Id.*

Crowe and ORCLA disagreed, and continue to disagree, with the statements in OSB's *Bar Bulletin* and particularly their explicit and implicit criticisms of President Trump. ER.088 at 28:14–29:8. In April 2018, Crowe contacted Defendant Hierschbiel, OSB's Chief Executive Officer and Chief Executive Director, to inform OSB of his objections to the use of bar fees to publish these statements; he requested a refund of his annual membership fees. ER.342 ¶ 50.

In response to his objection, Crowe received a partial dues refund from OSB in the amount of $1.15—calculated as $1.12, plus $0.03 of statutory interest. ER.113 at 127:22–128:6. ER.237 at 137:20–24.

This return of partial dues, however, did nothing to remedy the *association* injury suffered by Crowe and ORCLA, which is the only remaining claim on appeal.

### D. OSB's lobbying for changes to Oregon's Laws was and is non-germane activity.

Per its "Legislative Policy Guidelines," OSB grants itself authority to engage in legislative and public policy activities related to the following nine subjects:

> Regulating and disciplining lawyers; improving the functioning of the courts including issues of judicial independence, fairness, efficacy and efficiency; making legal services available to society; regulating lawyer trust accounts; the education, ethics, competence, integrity and regulation of the legal profession; providing law improvement assistance to elected and appointed government officials; issues involving the structure and organization of federal, state and local courts in or affecting Oregon; issues involving the rules of practice, procedure and evidence in federal, state or local courts in or affecting

> Oregon; or issues involving the duties and functions of judges and lawyers in federal, state and local courts in or affecting Oregon.

ER.067 § 11.1(a); ER.340–41 ¶¶ 36–39; ER.322–23 ¶¶ 36–39. OSB engages in substantial legislative activity, supporting and opposing bills before the Oregon legislature, and submitting its own bills. *See* ER.208 at 18:6–23. OSB's Board of Governors approves all the bills OSB supports, including those advanced and supported by the Sections of OSB. ER.225 at 87:4–16.

Despite the clear command of *Keller* and similar cases, OSB has supported, opposed, or advanced proposed legislation that is nongermane. *See* ER.088 at 27:17–28:5; ER.112–13 at 123:19–126:11; ER.113 at 127:22–6; ER.113 at 128:22–129:10. That is, these bills sought to change Oregon's laws in ways unrelated to the regulation of lawyers and/or improvement of legal services in Oregon.[2] In objecting to OSB's behavior, Plaintiff Crowe testified that people can have different opinions when it comes to public policy positions and that OSB should not take official public policy positions and/or advocate for those positions when members of OSB may disagree with them. *Id.*

---

[2] It bears emphasis that *Keller* acknowledged only *two* legitimate state interests that could justify compulsory funding and/or membership of a state bar association: regulating the practice of law and improving the quality of legal services. 496 U.S. at 13. Neither *Keller* nor any other case has suggested that anything whatsoever relating to the law qualifies as germane (and therefore chargeable to attorneys without their consent).

## 1. Nongermane legislative activity during the 2021 legislative session.

For example, during the 2021 legislative session alone, OSB testified in support of more than nineteen nongermane bills, a few of which are discussed below. *See* Public Affairs Committee, *Bills of Interest—Bills to Engage* (May 20, 2021), ER.281–286.

• OSB supported SB 297, which sought to allow judicial marshals to be included within the definition of "police officers" for purposes of the Public Employees Retirement System—something that has nothing to do with regulating or improving the practice of law. OSB provided testimony in support of this bill. Kellie Baumann, *Testimony of the Oregon State Bar in Support of SB 297 Before the Senate Judiciary and Ballot 110 Measure Implementation Committee* (Jan. 27, 2021), ER.287.

• OSB supported SB 513, a bill that sought to add a half-credit of civics to the statutory coursework requirements for a student to graduate high school. This, again, has nothing to do with the practice of law. Katherine Denning, then-Chair of OSB's Public Affairs Committee, testified in support of this bill on behalf of OSB. Katherine Denning, *Testimony of the Oregon State Bar in Support of SB 513 Before the Senate Committee on Education* (Mar. 10, 2021), ER.288.

• OSB supported SB 180, too; it sought to require insurers to notify a claimant directly in certain cases when paying more than $5,000 to settle a third-

party liability claim. This bill was introduced at the request of the Oregon State Bar Board of Governors and the General Counsel of the Oregon State Bar, Amber Hollister, testified in support of this bill—which, once more, is not related to the state interests approved by *Keller*. Amber Hollister, *Testimony Before the Senate Committee on Judiciary and Ballot Measure 110 Implementation in Support of Senate Bill 180 with the -2 Amendments on Behalf of the Oregon State Bar* (Mar. 8, 2021), ER.289–90.

    • OSB also supported SB 182, a bill that sought to terminate the authority of a spouse to act as an agent under certain estate planning documents upon annulment, separation, or dissolution of a marriage. Once more, this does not relate to regulating or improving the practice of law. Eric Wieland testified in support of this bill on behalf of OSB and its Estate Planning and Administration Section of which he was the Chair. Eric Wieland, *Testimony Before the House Committee on the Judiciary Subcommittee on Civil Law in Support of Senate Bill 182A on Behalf of the Oregon State Bar Estate Planning and Administration Section* (Apr. 28, 2021), ER.291–92.

    • OSB supported SB 185, a bill that sought to allow a nonprofit's board of directors or members to act electronically—including by email—so long as doing so is not prohibited by the articles of incorporation. This, too, is not germane. Susan Gary testified in support of this bill on behalf of OSB and its Nonprofit

Organizations section arguing that it was necessary to clarify the previous wholesale amending of the state's nonprofit code. Susan Gary, *Testimony Before the Senate Judiciary Committee in Support of Senate Bill 185 On behalf of the Oregon State Bar Nonprofit Organizations Section* (Feb. 11, 2021), ER.293–94.

• OSB supported SB 181, a bill that sought to require courts to consider whether access to justice would be promoted when awarding attorney fees, even when the attorney bringing the case did so pro bono. A member of OSB's Consumer Law Section testified on behalf of the Section and argued that the bill would increase the amount of attorney fees awarded in pro bono cases. Chris Mertens, *Testimony before the Senate Committee on the Judiciary and Ballot Measure 110 Implementation in Support of Senate Bill 181 on Behalf of the Oregon State Bar Consumer Law Section* (Feb. 11, 2021), ER.295–96.

• OSB also supported SB 183, which proposed to establish a process for recognizing judgments of tribal courts as "foreign judgments." Kristen Winemiller, the immediate past Chair of OSB's Indian Law section, testified on behalf of OSB and the Section in support of the bill. Kristen Winemiller, *Testimony Before the House Committee on Judiciary in Support of SB 183A on Behalf of the Oregon State Bar Indian Law Section* (May 13, 2021), ER.297–99.

• OSB also supported SB 768, a bill that sought to amend statutes related to OSB, but in the process would exempt OSB and its committees from being

required to record and make public its telephonic or video meetings, as is generally required of public bodies. Testifying in support of this bill, OSB's General Counsel, Amber Hollister, argued that OSB should be exempted from the law's transparency requirement because compliance would be expensive. Amber Hollister, *Testimony Before the House Committee on the Judiciary Subcommittee on Civil Law in Support of SB 768A on Behalf of the Oregon State Bar* (Apr. 28, 2021), ER.300–01.

• OSB also supported SB 829, a bill introduced at the request of OSB that sought to permit (under certain circumstances) a tenant with an unexpired lease to remain in possession of the property even after the property is sold, and to clarify the eviction procedures for individuals who purchase property that was sold to satisfy a judgment. Gary Blacklidge testified in support of this bill on behalf of OSB and its Debtor-Creditor Section. Gary Blacklidge, *Testimony Before the Senate Committee on Judiciary and Ballot Measure 110 Implementation In Support of SB 829 on Behalf of the Oregon State Bar Debtor-Creditor Section* (Mar. 8, 2021), ER.302.

• OSB also supported SB 295, a bill that sought to define terms related to "fitness to proceed" in criminal trials and clarified when a criminal defendant may be referred to the Oregon State Hospital. Katherine Denning, then-Chair of OSB's Public Affairs Committee, testified on behalf of OSB in support of this bill,

arguing that it was necessary to add "clarity to when and how a criminal defendant may be referred to the Oregon State Hospital." Katherine Denning, *Testimony of the Oregon State Bar in Support of SB 295 Before the Senate Judiciary and Ballot Measure 110 Implementation Committee* (Mar. 4, 2021). ER.303.

As these examples show, OSB used mandatory dues to fund lobbying that was not confined to regulating and improving the practice of law—that is, *Keller*-germane purposes—but instead acted as a sort of all-purpose ideological group supporting or opposing changes to the law based on its own policy preferences.

### 2. Nongermane Legislative Activity During the 2019 Legislative Session.

During the 2019 Legislative session, OSB supported at least eight nongermane bills, some of which are referenced below. *See* Oregon State Bar Meeting of the Board of Governors Meeting Agenda, 2018-2020 Diversity Action Plan (DAP) (Jun. 26, 2020) ER.304–05.

• OSB supported SB 359, which sought to create a process for the ratification of certain defective actions of shareholders or corporations. Valerie Sasaki, Chair of OSB's Business Law Section, testified on behalf of OSB and the Section in support of this bill, arguing that it was necessary because Oregon has no procedure for curing defective corporate actions. Valerie Sasaki, *Testimony of Oregon State Bar in support of SB 359 before the Senate Judiciary Committee* (Feb. 4, 2019), ER.306.

• OSB supported HB 2459, which sought to allow lienholders to ask for payoff amounts from other lienholders. Erich Paetsch testified on behalf of OSB and its Debtor-Creditor Section in support of this bill. Erich Paetsch, *Testimony before the House Judiciary Committee in Support of HB 2459 on Behalf of the Oregon State Bar Debtor-Creditor Section* (Feb. 12, 2019), ER.307–08.

• OSB supported SB 360, which sought to extensively modify Oregon's Nonprofit Corporations Act. Elizabeth Grant testified on behalf of OSB and its Nonprofit Organizations Law section in support of this bill. Elizabeth Grant, *Testimony Before the House Judiciary Committee in Support of SB 360 on Behalf of the Oregon State Bar Nonprofit Organizations Law Section* (Apr. 15, 2019), ER.309–10.

• OSB also supported SB 361, which sought to direct trustees to consider additional factors when managing a trust, including "the settlor's desire to engage in sustainable or socially responsible investment strategies." Sara Butcher testified on behalf of OSB and its Sustainable Futures Section in support of this bill. Sara Butcher, *Testimony Before the Senate Committee on Rules in Support of SB 361 on Behalf of the Oregon State Bar Sustainable Future Section* (May 20, 2019), ER.311–12.

Once again, none of these bills related to regulating the profession of law and the quality of legal representation.

### 3. Nongermane legislative activity during the 2018 legislative session.

During the 2018 Legislative Session, too, OSB supported at least four nongermane bills. Plaintiff will give only two examples: OSB supported HB 4008, which sought to prohibit courts from considering race or ethnicity in calculating protected future earning potential in a civil action,[3] and HB 4010, which aimed to create a taskforce to address racial disparities in the context of home ownership. Once again, neither bill related to regulating the practice of law.

### E.   Plaintiffs' injuries

Plaintiff Daniel Crowe is a licensed Oregon attorney and a member of OSB (solely because membership is mandatory). ORS § 9.160; ER.336 ¶ 14; ER.087 at 22:8–25:25. In January 2019, he changed his status with OSB to a "pro bono membership" because he wanted to continue providing volunteer legal work for veterans while minimizing the funds he was paying to OSB because of OSB's nongermane activities.  *Id.*

Crowe has suffered irreparable harm by being forced to associate with OSB and all its activities as a condition on the practice of law in Oregon. He does not want to associate with OSB in the first place, and believes conditioning his practice of law on association with OSB violates his First Amendment rights. He *especially*

---

[3] Oregon State Bar, *Testimony in support of HB 4008 before the House Committee on Judiciary* (Feb. 12, 2018). ER.313.

does not want to associate with OSB when it engages in conduct that is not germane to the practice of law or the regulation of lawyers *as lawyers*, such as lobbying for legislation such as whether judicial marshals should qualify as "police officers" for purposes of public pensions, or insinuating that people who voted for President Trump are white supremacists.

Plaintiff Oregon Civil Liberties Attorneys ("ORCLA") is an Oregon nonprofit corporation comprised of Oregon lawyers who object to being compelled members of OSB. ER.337 ¶ 18; ER.185 at 11:5–13:3; ORS § 9.160. ORCLA is a plaintiff on behalf of its members, who are being injured in the same way that Crowe is: they do not wish to join OSB in the first place, and especially do not want to be required to associate with OSB as it engages in conduct not germane to the practice of law or the regulation of lawyers as lawyers.

### F.    Plaintiffs' claims and procedural history.

On December 13, 2018, Appellants sued OSB and OSB officials in their official capacity (Appellees here), bringing the following claims:

1. Compelled Association: Mandatory membership in OSB alone violates Appellants' First and Fourteenth Amendment rights, irrespective of OSB's conduct. But Appellants' First Amendment rights are particularly violated because OSB engages in nongermane conduct not strictly required to regulate lawyers.

2. Mandatory Dues: Compelled payment of annual dues to OSB violates Appellants' First and Fourteenth Amendment rights because the payment of those dues cannot be separated from the organization that used them, including when it engages in conduct not germane under *Keller*.

3. Inadequate Procedure: To the extent compelled bar dues are constitutional, Appellants' First and Fourteenth Amendment rights are violated because OSB does not provide Appellants with adequate notice of its activities—as required by *Keller*—such that Appellants can know that their dues are funding non-germane conduct.

Appellants seek declaratory and injunctive relief—seeking to have Oregon's current mandatory bar scheme declared unconstitutional and enjoining enforcement of the current mandatory bar scheme.

After Appellants filed their complaint, Appellees moved to dismiss pursuant to Rules 12(b)(1) and 12(b)(6). The district court dismissed Appellants' challenge to mandatory OSB membership, concluding the Bar was immune from suit under the Eleventh Amendment, that Plaintiffs' free association and free speech claims were barred by precedent, and that the Bar's objection and refund procedures were constitutionally adequate.

On appeal, this Court reversed in part. *See Crowe v. Oregon State Bar*, 989 F.3d 714, 720 (9th Cir. 2021) ("*Crowe I*"). It held that neither *Keller* nor *Lathrop*

*v. Donohue*, 367 U.S. 820 (1961), resolved Appellants' free association claim, but upheld the district court's determination that precedent forecloses the free speech claim.

On remand, and after discovery, both sides moved for summary judgment on the free association claim. On December 19, 2022, a magistrate recommended that the district court grant the Defendants' motion and deny Plaintiffs' motion. Plaintiffs objected to the magistrate's finding and recommendations, raising all the issues now present on appeal: (1) that OSB engaged in nongermane conduct; (2) that there is no "major activity" requirement; (3) that *Janus* clarifies the application of *Keller*, and requires the application of exacting scrutiny; and (4) that OSB's engagement in nongermane conduct violated Plaintiffs' right to freedom of association.

## SUMMARY OF THE ARGUMENT

In *Keller*, the Supreme Court found that the State Bar could not constitutionally force members to subsidize speech that was not germane to either (a) the regulation of lawyers or (b) improving the quality of legal services. *Keller*, 496 U.S. at 17. But, as this Court acknowledged last time around, *Keller* expressly left unanswered "whether the First Amendment tolerates mandatory membership itself—independent of compelled financial support—in an integrated bar that

engages in nongermane political activities." *Crowe I*, 989 F.3d at 729. Neither has

this Court. *Id.* at 728. This case presents that question.

Although *Keller* does not squarely resolve the compelled membership issue,

it does provide helpful guidance for resolving that question, as does the Supreme

Court's more recent decisions in *Janus* and *Knox v. SEIU*, 567 U.S. 298 (2012),

and the Fifth Circuit's decision in *McDonald*.

First, *Keller* said that the "same constitutional rule" that applies in public-

sector union cases also applies to compulsory bar associations. 496 U.S. at 13. At

the time *Keller* was decided, the rule for public sector unions was the rule of

*Abood v. Detroit Board of Education*, 431 U.S. 209 (1977), which was the origin

of *Keller's* "germaneness" requirement. But while *Keller* adopted *Abood*'s

"germaneness" construct in relation to the freedom of association, the Court

expressly reserved the question of whether lawyers can be forced to join a bar

association to begin with, *see Keller*, 496 U.S. at 17 ("The California courts did not

address this claim, and we decline to do so in the first instance")—and

consequently it also declined to specify what standard of scrutiny applies to such a

claim.

Now, however, it is clear what standard of scrutiny applies. In *Janus*, 138 S.

Ct. at 2465, the Court said exacting scrutiny applies. *Janus* involved a public sector

union. And because the "same constitutional rule" applies to compulsory bar

associations as to compulsory public-sector unions, *Keller*, 496 U.S. at 13, the conclusion is clear: exacting scrutiny applies to the freedom of association question presented here.

One federal court of appeals has already applied *Keller* in light of *Janus*' clarification. In *McDonald*, the Fifth Circuit explained that if a bar association engages in *only germane* conduct, then exacting scrutiny is satisfied. 4 F.4th at 246. **However,** if a mandatory bar association engages in *non-germane* activities, then compelled membership *fails* exacting scrutiny. *Id*. at 245–46. This reconciliation of *Keller* and *Janus* by the Fifth Circuit provides a path forward for this Court to faithfully apply both Supreme Court precedents.

Doing so here requires reversing the decision below and holding that compelled membership in OSB violated Appellants' First Amendment free association rights. OSB engages in nongermane conduct. Compelling attorneys to join and fund it as a condition of practicing law therefore fails strict scrutiny. It does not matter how much or how little nongermane conduct OSB engages in.[4] The simple fact that it engages in nongermane activity is enough to establish a violation of Appellants' free association rights. To the extent that the amount of nongermane

---

[4] "There are no *de minimis* violations of the Constitution—no constitutional harms so slight that the courts are obliged to ignore them." *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 36–37 (2004) (O'Connor, J., concurring).

activity is relevant, it is only for purposes of crafting the proper relief, not for determining whether a violation exists in the first place.

No meaningful dispute exists as to the underlying facts. This Court can and should deem the publications and legislative activity Appellant challenges as nongermane, as that is a purely legal rather than factual question. Further, the Court should hold that the challenged actions are not excused by some "major activity" threshold, which is not supported by any controlling legal authority and was expressly rejected in *McDonald*. This Court should follow the Fifth Circuit's reasoning, avoid creating a circuit split, and hold that OSB has violated and is currently violating Appellants' right to freedom of association.

## ARGUMENT

### I. Standard of Review

This Court reviews de novo the grant of summary judgment. *Animal Legal Def. Fund v. FDA*, 836 F.3d 987, 988 (9th Cir. 2016). In considering the appeal of a district court's disposition of cross-motions for summary judgment, courts view the evidence for each motion "'in the light most favorable to the nonmoving party'" for that motion and determine "'whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law.'" *L.F. v. Lake Wash. Sch. Dist.*, 947 F.3d 621, 625 (9th Cir. 2020) (*quoting Wallis v. Princess Cruises, Inc.*, 306 F.3d 827, 832 (9th Cir. 2002)).

Here, no meaningful disagreement exists as to the facts, and the district court did not identify any in its Summary Judgment order. The dispute is purely legal. This Court can and should vacate the judgment entered against Appellants, enjoin enforcement of Oregon's mandatory bar scheme, and remand for further proceedings consistent with this Court's decision. *See Yim v. City of Seattle*, 63 F.4th 783 (9th Cir. 2023) (reversing ruling on cross motions for summary judgment and directing partial judgment be entered for non-prevailing party below).

## II. The Supreme Court's decision in *Janus* clarifies the application of *Keller's* germaneness test.

After this Court reversed the first time, the main issues on remand were whether the exacting scrutiny standard of *Janus* applies to Appellants' freedom of association claim, and the relevance of *Keller*'s instructions regarding germaneness. 989 F.3d at 729. The district court rejected any application of *Janus* and its exacting scrutiny standard to this claim, relying entirely upon the opinion of the Tenth Circuit Court of Appeals in *Schell v. Chief Justice & Justices of the Oklahoma Supreme Court*, 11 F.4th 1178 (10th Cir. 2021). *Crowe v. Oregon State Bar*, No. 3:18-cv-2139-JR, 2023 WL 1991529, at *4–5 (D. Or. Feb. 14, 2023 (*Crowe II*).

But in *Schell*, and unlike here, the Tenth Circuit was not assessing the merits of the plaintiff's claim, only whether the plaintiff had alleged an association claim

sufficient to survive a motion to dismiss. *See generally Schell*, 11 F.4th at 1191–95. The Tenth Circuit concluded the plaintiff had done so and reversed. In so doing, the court used the germaneness construct from *Keller* as a means of assessing whether the association claim survived the Rule 12(b)(6) challenge. *Id.* In that sense, *Schell* was postured like *Crowe I*, with the appellate court determining whether viable claims had been alleged, not the legal standard to apply when assessing whether the plaintiff prevails on the merits of those claims, which is what this court tasked the district court to do in *Crowe I*. 989 F.3d at 729.

In deciding the merits here, Appellants argued below, and argue again here, that this Court should have taken the approach the Fifth Circuit Court of Appeals used in *McDonald* to rule upon the merits of the plaintiffs' claims in that bar challenge. 4 F.4th at 246. In *McDonald* the court used the germaneness construct from *Keller* to assess whether the bar's conduct survived the appropriate level of scrutiny in an association claim, which is exacting scrutiny. *Id.* Per *McDonald*, the bar's conduct fails exacting scrutiny if it is nongermane. *Id.* This Court should follow that logic and apply *Keller*'s germaneness standard with exacting scrutiny in determining whether OSB violated Appellants free association rights.

The First Amendment guarantees freedom of association. *See Roberts v. U.S. Jaycees*, 468 U.S. 609, 618 (1984). This includes the right *not* to associate. *Id.* at 623. Exacting scrutiny applies to freedom of association challenges. *Janus*, 138

S. Ct. at 2465; *see also McDonald*, 4 F.4th at 246. Membership in OSB includes compulsory annual financial support, so compulsory membership in OSB, means compulsory support.

Under exacting scrutiny, compelled membership in OSB would be permissible "only when [it] serve[s] a 'compelling state interest that cannot be achieved through means significantly less restrictive of associational freedoms.'" *Knox*, 567 U.S. at 310 (quoting *Roberts*, 468 U.S. at 623). The Supreme Court has offered only two state interests that might suffice: regulating the practice of law and improving the quality of legal services. *See Keller*, 496 U.S. at 13–14 ("Here the compelled association and integrated bar are justified by the State's interest in regulating the legal profession and improving the quality of legal services. The State Bar may therefore constitutionally fund activities germane to those goals out of the mandatory dues of all members.").

If a Bar association engages in *only* germane conduct—that is, conduct germane to those two interests—then compulsory association and funding would survive exacting scrutiny. The Supreme Court made that clear in *Harris v. Quinn,* 573 U.S. 616, 655–56 (2014), when it said states "have a strong interest in allocating to the members of the bar, rather than the general public, the expense of ensuring that attorneys adhere to ethical practices," along with shouldering the cost of regulating the legal profession and improving the quality of legal services in the

state. Given this, "*Keller*, which allowed compelled subsidization of germane activities, fits comfortably within the exacting scrutiny framework." *McDonald*, 4 F.4th at 246 (cleaned up).

But if a mandatory bar association engages in nongermane conduct, then compelled association fails exacting scrutiny. *Id*. Why? Because while states have legitimate interests in allocating "expenses of regulating the legal profession and improving the quality of legal services to licensed attorneys," the state *does not* "have a compelling interest in having all licensed attorneys engage as a group in other, non-germane activities." *Id.* at 246. As the *Keller* decision itself said, it may be hard sometimes to discern whether something is germane to the two state interests justifying compelled membership, "[b]ut the extreme ends of the spectrum are clear: Compulsory dues may not be expended to endorse or advance a gun control or nuclear weapons freeze initiative," because these are simply political or policy positions whose relationship to the practice of law is attenuated. 496 U.S. at 15–16.

Further supporting this logic is the fact that states have other, significantly less restrictive means of achieving a legitimate state interest in ensuring lawyers shoulder the cost of regulating lawyers. In *Janus*, 138 S. Ct. at 2465–66, the Court made clear that exacting scrutiny turns on this consideration: if a state can accomplish its legitimate interests in ways that are significantly less restrictive of

associational freedoms, it must. And it is clear here that Oregon can regulate the practice of law and improve the quality of legal services in ways significantly less restrictive of associational freedoms than by forcing Crowe to join and fund the activities of OSB, which engages in nongermane speech and lobbying. Some twenty other states already regulate the licensing and discipline of lawyers *without* forcing them to join and pay for a state bar that engages in nongermane activities. *See* Levin, *supra* at 2; *see also McDonald*, 4 F.4th at 246 (stating that even "some of the largest legal markets, such as New York, Illinois, and Pennsylvania [] directly regulate the licensing and disciplining of attorneys"). California, the largest legal market in this Circuit, recently began using a hybrid model that does not require attorneys to associate with non-germane conduct. Cal. Bus. & Prof. Code §§ 6001, 6031.5(a), 6056. And there is no reason to believe attorneys in these states are less competent or skilled than attorneys in Oregon. *Cf. McDonald*, 4 F.4th at 246. At least, OSB has not shown otherwise—and exacting scrutiny puts the burden on them to do so. *Thompson v. Hebdon*, 909 F.3d 1027, 1034 (9th Cir. 2018).

As such, Appellants are entitled to summary judgment on their freedom of association claim if the Bar is in fact engaged in non-germane activities.

**III.    As OSB engages in nongermane activity both with its *Bar Bulletin* and its legislative activity, compelled association with OSB fails exacting scrutiny.**

Under *Keller*, the only state interests sufficient to justify compulsory bar membership are "[the] regulat[ion of] the legal profession [and the] improv[ement of] the quality of legal services." *Keller*, 496 U.S. at 13; *McDonald*, 4 F.4th at 246. For an activity to be "germane" to those purposes, it must be "'necessarily or reasonably incurred'" for one or both. *McDonald*, 4 F.4th at 247 (citation omitted). Although political and ideological activity is not inherently nongermane, *Keller*, 496 U.S. at 17, it is nongermane when it does not strictly relate to regulating lawyers and improving legal services. If the conduct is both nongermane and political or ideological in nature, that compounds the constitutional violation. *See Janus*, 138 S. Ct. at 2463.

OSB engages in a wide range of conduct not related to either the regulation of the practice of law or the improvement of legal services. Indeed, it frequently engages in activities that are both nongermane *and* political/ ideological, which compounds the Plaintiffs' constitutional injury. OSB exemplifies this form of nongermane conduct through its *Bar Bulletin* publications and its legislative program.

The district court erred in concluding that *all* legislative activity complained of was germane, and in concluding that both *Bar Bulletin* articles complained of

were either nongermane or did not meet the threshold of enough nongermane conduct to run afoul of the Constitution.

## A. Statements in OSB's *Bar Bulletin* are nongermane and therefore fail exacting scrutiny.

OSB communicated with its members and the public through its monthly *Bar Bulletin*. OSB's Bylaws state that OSB may only publish communications that are "germane to the law, lawyers, the practice of law, the courts and the judicial system, legal education and the Bar in its role as a mandatory membership organization," and that communications "should advance public understanding of the law, legal ethics and the professionalism and collegiality of the bench and Bar." ER.066 § 10.1. Yet despite paying lip service to *Keller* and its germaneness requirement, OSB actually publishes position statements and other articles on any topic of possible interest to lawyers.

That is not constitutionally permitted. *Janus* now leaves no doubt that *Keller* strictly limits OSB's editorial discretion. OSB may not use its publication to make statements "having political or ideological coloration which are not reasonably related to" regulating the practice of law or improving the quality of legal services. *Keller*, 496 U.S. at 15. In technical terms, **all articles published in the *Bar Bulletin* must be germane to the regulation of the practice of law or improving the quality of legal services in Oregon**.

The statements OSB published in its April 2018 *Bar Bulletin* violate the germaneness requirement. These statements cite to an alleged rise of white nationalism in the United States, and do so in a manner designed to imply that President Trump was at least partly responsible and that people who supported his candidacy and policies also support white nationalism. However noble OSB's intent in condemning perceived racism, these statements gratuitously inject OSB (and its members) into a highly charged political debate; one not specifically relating to either the practice of law or the improvement of legal services.

Everyone has a right to an opinion about President Trump—and no person can be compelled by force of law to associate with another person or group's opinion. *See W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943) ("If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein."). Accordingly, *Keller* made clear that political statements—including attacking a political candidate and his supporters—were generally nongermane. That is even clearer now that *Janus* has held that exacting scrutiny applies to such questions.

To be sure, the statement of OSB is less inflammatory than the "Joint Statement of the Oregon Specialty Bar Associations Supporting the Oregon State

29

Bar's Statement on White Nationalism and Normalization of Violence" ("Joint Statement"), ER,351. But to view them as two separate statements is a mistake. Nominally they are. But it is OSB who has the sole discretion of what will be published and how, which in this instance was to present these interrelated messages on facing pages, formatted as one message from OSB.

OSB knew exactly what the Joint Statement said, and made the decision to place the pages in consecutive pages with a shared border. OSB had to know that the statements were not going to be read separately and that the contents of the Joint Statement and its explicit agreement with OSB's statement inform a reader about what OSB was *really* saying.

As *McDonald*, made clear, compelling membership in a bar association that engages in this kind of political and ideological conduct necessarily fails exacting scrutiny. 4 F.4th at 246. It fails because mandatory bars have no compelling interest in forcing their members to participate, even passively, in nongermane activities. Those Oregon attorneys who desire to engage in political discourse through an association are free to do so in a private bar association, like the ones that already exist in Oregon and elsewhere. *See id*. But OSB cannot force

Appellants to associate with its political and ideological undertakings. Thus the district court erred in holding that OSB's statement was germane.[5]

**B.** **OSB engages in significant legislative activity, of which some at least is nongermane and therefore the compelled association fails exacting scrutiny.**

As with its publications, OSB's legislative activities must be strictly limited to those activities necessary to regulate lawyers and improve legal services. The legislative items cataloged in the Statement of the Case Section D above, however, amount to attempts at lawmaking on substantive public policy matters unrelated to the regulation of lawyers qua lawyers or the improvement of legal services. They are no different in principle from the gun control or nuclear freeze initiatives found nongermane and unconstitutional in *Keller*. 496 U.S. at 15–16.

OSB's robust legislative advocacy practice is in no way limited to matters strictly related to regulating lawyers and their role in the legal system. Indeed, OSB's Bylaws, while seeming to direct OSB's legislative activities to nine discrete topics, do not distinguish between germane and nongermane issues. On their face, those Bylaws authorize OSB to engage in legislative activity that "provid[es] law improvement assistance to elected and appointed government officials," language

---

[5] The court below held that whether the Joint Statement was nongermane was a factual issue which made summary judgment inappropriate, but that even if it was nongermane it was of no consequence because it failed to meet the threshold of some *amount* of permissible nongermane conduct to rise to a level of constitutional injury. Both conclusions were incorrect, as discussed below, Section IV.

that empowers OSB to weigh in on *any* law, regulation, or public policy matter in Oregon, regardless of whether it relates to the regulation of lawyers or the improvement of legal services. ER.067 § 11.1.

Each of the bills referenced in the Statement of the Case Section D above concerns matters of public policy that have no relationship to these legitimate state interests. They relate to the regulation of insurers, rules related to a spouse's agency, the government of nonprofits, a public records and transparency exemption for OSB, the retirement benefits of certain public employees, and even civics requirements for school children, taskforces examining racial disparities in home ownership—and so forth. At best, these bills seek to "chang[e] the law[s] *governing* cases, disputes, or transactions *in which attorneys might be involved*." *McDonald*, 4 F.4th at 248 (emphasis in original), but that is not enough under *Keller*. See *id.* at 247. If lobbying for a civic requirement for graduation or even the general government of nonprofits are germane, it is hard to imagine what legislative activity would be *nongermane.*

The temptation to go beyond permissible limits even shows itself in relation to SB 768, the bill from 2021 which is the most seemingly "germane." For even in that somewhat anodyne bill, OSB sought to exempt itself from laws related to record keeping for public meetings. That does not concern the regulation of lawyers. Rather, it concerns OSB attempting to dispense with an administrative

inconvenience of having to comply with the Oregon laws that govern all other public meetings.

OSB cannot claim that its lobbying and political advocacy are permissible because the bills it supported or crafted improve the legal system in some general way, or promote OSB's vision of fairness or social justice—because that would, again, make "germaneness" a meaningless concept: it would empower OSB to lobby in favor of whatever legislation it thought would improve Oregon law. That is just what the "germaneness" rule forbids. *Keller*, *Janus*, and *McDonald* show that "germaneness" means activities that specifically and particularly promote the state's interest in regulating how attorneys practice law—not to broader social and political questions—because neither lawyers nor anyone else can be required to subsidize lobbying for positions they do not support. *Janus*, 138 S. Ct. at 2464 (quoting Thomas Jefferson, "to compel a man to furnish contributions of money for the propagation of opinions which he disbelieves and abhor[s] is sinful and tyrannical."). *None* of the many bills described in Section D fits within the constitutional parameters because none relates directly to the lawyers' regulated role as providers of legal services.

## C. Whether a particular activity is germane or nongermane is a question of law, not fact.

The district court held that there was an "issue of fact" as to whether the Joint Statement was germane. That was reversible legal error, because germaneness is a legal rather than a factual question.

## D. OSB's complained of actions are not narrowly tailored to the recognized government interest in regulating the legal profession or improving the quality of legal services in the state.

OSB's actions fail exacting scrutiny not just because its lobbying and speech fails to advance a compelling state interest—that is, they are pervasively, explicitly, and consistently nongermane to the practice of law or the improvement of the legal profession—but also because compelling Plaintiffs to join and subsidize OSB is not "narrowly tailored to the government's asserted interest." *Ams. for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2383 (2021). In the freedom of association context, this tailoring requirement means OSB must show that it cannot achieve the legitimate state interest of regulating the practice of law "'through means significantly less restrictive of associational freedoms'" than compulsory membership. *Janus*, 138 S. Ct. at 2466 (citation omitted).

But it is obvious that there is a less restrictive alternative: Oregon can regulate the practice of law without compelling membership in OSB, which is what some twenty states already do.

*Janus* is helpful here. When applying the tailoring prong of the exacting scrutiny test, the Court observed that many states (and the federal government) did not force public sector employees to join a union and/or subsidize that union out of their paychecks—yet there was no reason to believe that these states or the federal government failed to achieve "labor peace," which was the government's asserted interest. *Id.* at 2466. This fact alone proved that there were adequate alternative means to achieving the government's interest which were less burdensome on associational rights. *Id.* at 2465.

The same reasoning applies here. Almost half the states *already* license, regulate, and discipline lawyers without forcing them to join a trade association as a condition of their practice of law in that state.[6] *McDonald*, 4 F.4th at 246. One entire federal circuit—the Second Circuit—is comprised of states that do not have mandatory bars. Again, there is no reason to believe attorneys in these states are less competent or skilled Oregon attorneys. *See id*. at 246. The point is: there are less restrictive alternatives for accomplishing the state's legitimate interests without forcing Crowe and other attorneys to subsidize lobbying and speech on political issues with which they disagree.

---

[6] Likewise, no state forces physicians to join the American Medical Association, or requires psychologists to join the American Psychological Association, both of which engage in lobbying and similar political activities. Instead, states just regulate the practice of medicine or psychology directly.

**IV.  No "Major Activity" standard governs whether the OBA's constitution violations are excusable.**

The district court erred in declaring that the nongermane conduct must rise to a certain threshold—and be a "major activity" of OBA—before it violates the First Amendment's protection for free association. ER.013. But no such requirement is found in the law, and OSB is not entitled to a free pass in violating the First Amendment to some "less-than-major" amount.

Again, the only justifications that permit forcing lawyers to join and support a bar association are regulating the practice of law and improving the quality of legal services. Neither *Keller* nor any other case gives the state permission to violate the First Amendment "just a little bit." To allow this flies in the face of longstanding First Amendment law, which has always held that even such seemingly minor mandates as being required to recite the pledge of allegiance, *Barnette, supra,* or to give a penny per mound to fund mushroom advertising, *United States v. United Foods, Inc.*, 533 U.S. 405, 408 (2001), or to remove a jacket in a courthouse, *Cohen v. California*, 403 U.S. 15 (1971), or to stand quietly while a clergyman recites a prayer at a school function, *Lee v. Weisman*, 505 U.S. 577 (1992), raise serious First Amendment issues. The rule is plain: "There is no *de minimis* exception for a speech restriction that lacks sufficient tailoring or justification." *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 567 (2001); *see also Sch. Dist. of Abington Twp. v. Schempp*, 374 U.S. 203, 225 (1963) ("[I]t is no

defense" to say that the government's action represents a "relatively minor encroachment on the First Amendment.")

Not only is there no amount of acceptable compelled association or speech, but requiring a plaintiff to prove that the violations of his or her constitutional rights surpasses some percentage of bar activity would be an unreasonable, if not impossible, standard for any plaintiff to meet. That is probably one reason there is no precedent supporting such a "threshold."

Further, such a requirement would create a clear circuit split. The Fifth Circuit in *McDonald* held that merely because *some* of the Texas Bar Association's legislative program was nongermane, "compelling the plaintiffs to join an association engaging it violates their freedom of association." 4 F.4th at 249. The court held that some of the program was germane and that many other complained of activities were germane. Nevertheless, it held that the fact that some legislative activity was nongermane was sufficient to violate free association rights.

Moreover, any requirement that the courts determine whether something is a major activity of a bar association will inevitably be laden with value judgments about the importance or effect of any given activity. How would the court calculate the scale of the violation if OSB were to officially endorse a candidate for the presidency—but just do it one time? Would this be a lesser or a greater violation than endorsing a candidate for mayor in three or four sequential elections? Would

37

lobbying for a nuclear freeze count as a worse violation than lobbying for gun control? This Court should avoid engaging in the arbitrary and subjective line-drawing exercise of calculating how much associational harm is too much, or which speech is sufficiently "prominent" or weighty to trigger a valid associational claim.

The results here should be no different than in *McDonald*. Appellants have identified OSB conduct that is nongermane, which means OSB's conduct fails exacting scrutiny. As such, compelled association with OSB violates Appellants free association rights.

## CONCLUSION

This Court should vacate the district court's judgment against Appellants, render an injunction preventing the enforcement of Oregon's rules requiring Appellants to join OSB, and remand to the district court for further proceedings necessary to render other relief Appellant request.

Respectfully submitted this 24th day of July 2023,

/s/ *Scott Day Freeman*
Scott Day Freeman
Adam C. Shelton
**Scharf-Norton Center for**
**Constitutional Litigation**
**at the GOLDWATER INSTITUTE**
*Attorneys for Appellants*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify that:

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 8,682 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionately spaced typeface using Microsoft Word 2016 Times New Roman 14-point font.

Date: July 24, 2023

/s/ Scott Day Freeman
Scott Day Freeman
Adam Shelton
**Scharf-Norton Center for**
**Constitutional Litigation**
**at the GOLDWATER INSTITUTE**
*Attorneys for Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that on July 24, 2023, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


/s/ *Scott Day Freeman*
Scott Day Freeman

**STATEMENT OF RELATED CASES**

Other plaintiffs challenged Oregon's mandatory bar membership and dues in

*Gruber v. Oregon State Bar*, No. 3:18-cv-1591-JR. An appeal of the *Gruber*

decision was filed before this Court as case number 19-35470. An Opinion was

issued on February 26, 2021. A Petition for Writ of Certiorari was filed April 26,

2021 and was denied on October 4, 2021. The case was remanded to the trial court

where final judgment was entered on February 15, 2023. An appeal of the decision

is pending before this Court as case number 23-35144.

Submitted this 24th day of July 2023.

/s/ *Scott Day Freeman*
Scott Day Freeman
Adam C. Shelton
**Scharf-Norton Center for**
**Constitutional Litigation**
**at the GOLDWATER INSTITUTE**
*Attorneys for Appellants*

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

DANIEL Z. CROWE; and OREGON CIVIL LIBERTIES ATTORNEYS,

Plaintiffs-Appellants,

vs.

OREGON STATE BAR, et al.

Defendants-Appellees.

## PLAINTIFFS-APPELLANTS' ADDENDUM

Appeal from the United States District Court for the District of Oregon
Case No. 3:18-cv-02139-JR, Hon. Michael H. Simon, presiding

**MILITARY DISABILITY LAWYER, LLC**
Luke D. Miller
1567 Edgewater St. NW
PMB 43
Salem, OR 97304
(800) 392-5682
luke@militarydisabilitylawyer.com

**Scharf-Norton Center for Constitutional Litigation at the GOLDWATER INSTITUTE**
Jacob Huebert
Timothy Sandefur
500 E. Coronado Rd.
Phoenix, Arizona 85004
(602) 462-5000
litigation@goldwaterinstitute.org

*Attorneys for Plaintiffs-Appellants*

# TABLE OF CONTENTS

28 U.S.C. § 1291 .................................................................. 44

28 U.S.C. § 1331 .................................................................. 44

28 U.S.C. § 1343 .................................................................. 44

42 U.S.C. § 1983 .................................................................. 45

ORS § 9.010(2) ................................................................... 45

ORS § 9.080(1) ................................................................... 45

ORS § 9.114 ....................................................................... 45

ORS § 9.160 ....................................................................... 46

ORS § 9.210 ....................................................................... 48

ORS § 9.490 ....................................................................... 49

**28 U.S.C. § 1291. Final decisions of district courts**

The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court. The jurisdiction of the United States Court of Appeals for the Federal Circuit shall be limited to the jurisdiction described in sections 1292(c) and (d) and 1295 of this title.

**28 U.S.C. § 1331. Federal question**

The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

**28 U.S.C. § 1343. Civil rights and elective franchise**

**(a)** The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

**(1)** To recover damages for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in section 1985 of Title 42;

**(2)** To recover damages from any person who fails to prevent or to aid in preventing any wrongs mentioned in section 1985 of Title 42 which he had knowledge were about to occur and power to prevent;

**(3)** To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;

**(4)** To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

**(b)** For purposes of this section--

**(1)** the District of Columbia shall be considered to be a State; and

**(2)** any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

**42 U.S.C. § 1983. Civil action for deprivation of rights**

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

**ORS § 9.010(2). Attorneys deemed officers of court; statutes applicable to Oregon State Bar**

(2) The Oregon State Bar is a public corporation and an instrumentality of the Judicial Department of the government of the State of Oregon. The bar is authorized to carry out the provisions of ORS 9.005 to 9.757.

**ORS § 9.080. Duties of board; professional liability fund; quorum**

(1) The state bar shall be governed by the board of governors, except as provided in ORS 9.136 to 9.155. The state bar has the authority to adopt, alter, amend and repeal bylaws and to adopt new bylaws containing provisions for the regulation and management of the affairs of the state bar not inconsistent with law. The board is charged with the executive functions of the state bar and shall at all times direct its power to serve the public interest by:

(a) Regulating the legal profession and improving the quality of legal services;

(b) Supporting the judiciary and improving the administration of justice; and

(c) Advancing a fair, inclusive and accessible justice system.

**ORS § 9.114. Training requirements relating to duties to report elder and child abuse**

The Oregon State Bar shall adopt rules to establish minimum training requirements for all active members of the bar relating to the duties of attorneys under ORS 124.060 and 419B.010. Rules adopted under this section are subject to review and approval by the Supreme Court.

**ORS § 9.160. Practice of law by persons other than active members prohibited**

(1) Except as provided in this section, a person may not practice law in this state, or represent that the person is qualified to practice law in this state, unless the person is an active member of the Oregon State Bar.

(2) Subsection (1) of this section does not affect the right to prosecute or defend a cause in person as provided in ORS 9.320.

(3) Any employee or volunteer of the Judicial Department acting with the authorization and direction of the Chief Justice or a presiding judge of a circuit court to provide assistance to members of the public with court processes, selecting and completing court forms and legal information is not engaged in the practice of law in violation of subsection (1) of this section.

(4) An individual licensed under ORS 696.022 acting in the scope of the individual's license to arrange a real estate transaction, including the sale, purchase, exchange, option or lease coupled with an option to purchase, lease for a term of one year or longer or rental of real property, is not engaged in the practice of law in this state in violation of subsection (1) of this section.

(5) A title insurer authorized to do business in this state, a title insurance agent licensed under the laws of this state or an escrow agent licensed under the laws of this state is not engaged in the practice of law in this state in violation of subsection (1) of this section if, for the purposes of a transaction in which the insurer or agent provides title insurance or escrow services, the insurer or agent:

(a) Prepares any satisfaction, reconveyance, release, discharge, termination or cancellation of a lien, encumbrance or obligation;

(b) Acts pursuant to the instructions of the principals to the transaction as scrivener to fill in blanks in any document selected by the principals;

(c) Presents to the principals to the transaction for their selection any blank form prescribed by statute, rule, ordinance or other law; or

(d) Presents to the principals to the transaction for their selection a blank form prepared or approved by a lawyer licensed to practice law in this state for one or more of the following:

(A) A mortgage.

(B) A trust deed.

(C) A promissory note.

(D) An assignment of a mortgagee's interest under a mortgage.

(E) An assignment of a beneficial interest under a trust deed.

(F) An assignment of a seller's or buyer's interest under a land sale contract.

(G) A power of attorney.

(H) A subordination agreement.

(I) A memorandum of an instrument that is to be recorded in place of the instrument that is the subject of the memorandum.

(6) In performing the services permitted in subsection (5) of this section, a title insurer, a title insurance agent or an escrow agent may not draft, select or give advice regarding any real estate document if those activities require the exercise of informed or trained discretion.

(7) The exemption provided by subsection (5) of this section does not apply to any acts relating to a document or form that are performed by an escrow agent under subsection (5)(b), (c) or (d) of this section unless the escrow agent provides to the principals to the transaction a notice in at least 12-point type as follows:

YOU WILL BE REVIEWING, APPROVING AND SIGNING IMPORTANT DOCUMENTS AT CLOSING. LEGAL CONSEQUENCES FOLLOW FROM THE SELECTION AND USE OF THESE DOCUMENTS. THESE CONSEQUENCES AFFECT YOUR RIGHTS AND OBLIGATIONS. YOU MAY CONSULT AN ATTORNEY ABOUT THESE DOCUMENTS. YOU SHOULD CONSULT AN ATTORNEY IF YOU HAVE QUESTIONS OR CONCERNS ABOUT THE TRANSACTION OR ABOUT THE DOCUMENTS. IF YOU WISH TO REVIEW TRANSACTION DOCUMENTS THAT YOU HAVE NOT YET SEEN, PLEASE CONTACT THE ESCROW AGENT.

(8) The exemption provided by subsection (5) of this section does not apply to any acts relating to a document or form that are performed by an escrow agent under subsection (5)(b), (c) or (d) of this section for a real estate sale and purchase transaction in which all or part of the purchase price consists of deferred payments by the buyer to the seller unless the escrow agent provides to the principals to the transaction:

(a) A copy of any proposed instrument of conveyance between the buyer and seller to be used in the transaction;

(b) A copy of any proposed deferred payment security instrument between the buyer and seller to be used in the transaction; and

(c) A copy of any proposed promissory note or other evidence of indebtedness between the buyer and seller to be used in the transaction.

(9) The notice and copies of documents that must be provided under subsections (7) and (8) of this section must be delivered in the manner most likely to ensure receipt by the principals to the transaction at least three days before completion of the transaction. If copies of documents have been provided under subsection (8) of this section and are subsequently amended, copies of the amended documents must be provided before completion of the transaction.

(10) Failure of any person to comply with the requirements of subsections (4) to (9) of this section does not affect the validity of any transaction and may not be used as a basis to challenge any transaction.

### ORS § 9.210. Board of bar examiners; duties; fees for admission to bar; confidentiality of applicant information

(1) The Supreme Court shall appoint a board of bar examiners to carry out the admissions functions of the Oregon State Bar as set forth in the bar bylaws and the rules of the Supreme Court. The composition of the board of bar examiners shall be as provided in the rules of the Supreme Court, but the board must include at least two public members.

(2) The board shall examine applicants, investigate applicants' character and fitness and recommend to the Supreme Court for admission to practice law those who fulfill the requirements prescribed by law and the rules of the Supreme Court.

(3) With the approval of the Supreme Court, the board may fix and collect fees to be paid by applicants for admission, which fees shall be paid into the treasury of the bar.

(4) Applications for admission and any other material pertaining to individual applicants are confidential and may be disclosed only as provided in the rules of the Supreme Court. The board's consideration of an individual applicant's qualifications is a judicial proceeding for purposes of ORS 192.610 to 192.690.

### ORS § 9.490. Rules of professional conduct; sanctions for violation of rules

(1) The board of governors, with the approval of the house of delegates given at any regular or special meeting, shall formulate rules of professional conduct, and when such rules are adopted by the Supreme Court, shall have power to enforce the same. Such rules shall be binding upon all members of the bar.

(2) A court of this state may not order that evidence be suppressed or excluded in any criminal trial, grand jury proceeding or other criminal proceeding, or order that any criminal prosecution be dismissed, solely as a sanction or remedy for violation of a rule of professional conduct adopted by the Supreme Court.