No. 23-35193

IN THE

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

▶▶◀◀

DANIEL Z. CROWE; and OREGON CIVIL LIBERTIES ATTORNEYS,

*Plaintiffs-Appellants*,

v.

OREGON STATE BAR, *et al.*,

*Defendants-Appellees*.

On Appeal From The United States District Court for the District of Oregon
*Hon. Michael H. Simon, District Judge*
*Case No. 3:18-cv-02139-JR*

## APPELLEES' ANSWERING BRIEF

Kristin M. Asai
Paul Matthias-Bennetch
Abigail Gore
Holland & Knight LLP
601 SW Second Avenue, Suite 1800
Portland, OR 97204
Telephone: (503) 243-2300

*Attorneys for Defendants-Appellees*

October 20, 2023

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1, Defendant-Appellee Oregon State Bar is a public corporation that does not have a parent corporation and no publicly held corporation holds 10% or more of its stock.

HOLLAND & KNIGHT LLP


By: *s/ Kristin M. Asai*
    Kristin M. Asai
    Kristin.Asai@hklaw.com

    *Attorney for Defendants-Appellees*

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................1

JURISDICTIONAL STATEMENT .......................................................3

ISSUE PRESENTED .............................................................................4

STATEMENT OF THE CASE.................................................................4

   I.     RELEVANT FACTUAL BACKGROUND ................................4

     A.    The OSB is authorized to regulate the legal profession, improve the quality of legal services in Oregon, and advance a fair and inclusive justice system, among other things. ..........................................4

     B.    As part of its duties, the OSB implemented a Legislative Policy which Appellants admit is facially constitutional....................................6

     C.    The OSB followed its Legislative Policy in supporting the legislation challenged by Appellants.........................................................8

     D.    The OSB published the April 2018 Bar Bulletin, including the two statements challenged by Appellants, for germane purposes. ................13

     E.    Appellants stopped practicing law in Oregon almost immediately after filing this lawsuit. ..........................................15

   II.    PROCEDURAL BACKGROUND ..........................................16

     A.    Appellants initially asserted free speech and free association claims arising from the April 2018 Bar Bulletin statements.............................16

     B.    This Court affirmed the dismissal of Appellants' free speech claim, but remanded the free association claim on narrow grounds. ................16

     C.    The District Court granted summary judgment to OSB on Appellants' remaining associational claim.............................................17

SUMMARY OF ARGUMENT ..............................................................19

STANDARD OF REVIEW ...................................................................20

ARGUMENT ........................................................................................21

   I.    The District Court correctly concluded that *Keller* and *Lathrop* (not *Janus*) are the appropriate standards to apply to Appellants' First Amendment claim. ..........................................21

A. *Janus* did not alter *Keller*'s germaneness framework for integrated bar associations. ......................................................................22

B. *Janus* did not alter *Lathrop*'s materiality requirement for nongermane conduct by integrated bar associations. ...........................25

II. The District Court correctly held that Appellants failed to establish any nongermane activity by the OSB that violated their associational rights.................................................................................................30

A. The District Court correctly concluded that all of the OSB's legislative activity was germane...........................................................31

B. The District Court correctly concluded that the OSB's publication of the OSB Statement was germane...........................................................37

C. The District Court erred in finding an issue of fact on germaneness with respect to the Affinity Bar Statement, but correctly concluded that even if nongermane it was *de minimis* under *Lathrop*. ...................39

III. The District Court also did not err in granting summary judgment because Appellants failed to demonstrate any associational harm. ...........41

A. Appellants presented no record evidence that their compelled membership in the OSB caused any person to associate them with the OSB's activities. .................................................................................43

B. Appellants presented no record evidence that their compelled membership in the OSB prevented them from expressing their own opinions...............................................................................................45

CONCLUSION....................................................................................................46

STATEMENT OF RELATED CASES ................................................................48

CERTIFICATE OF COMPLIANCE.....................................................................48

CERTIFICATE OF SERVICE .............................................................................49

ADDENDUM .......................................................................................................50

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Blair v. Bethel Sch. Dist.*,
  608 F.3d 540 (9th Cir. 2010) ...............................................................29

*Boudreaux v. Louisiana State Bar Ass'n*,
  620 F. Supp. 3d 440 (E.D. La. 2022)...................................................28

*Boy Scouts of Am. v. Dale*,
  530 U.S. 640 (2000)..................................................29, 42, 44, 45

*Crowe v. Or. State Bar*,
  989 F.3d 714 (9th Cir. 2021) ....................................................*passim*

*Cruz v. Nat'l Steel & Shipbuilding Co.*,
  910 F.3d 1263 (9th Cir. 2018) .......................................................21, 42

*File v. Hickey*,
  143 S. Ct. 745 (2023) ..........................................................................23

*File v. Martin*,
  33 F.4th 385, 392 (7th Cir. 2022) .......................................................23

*Green v. Miss USA, LLC*,
  52 F.4th 773 (9th Cir. 2022) ...............................................................43

*Gruber v. Oregon State Bar*,
  No. 3:18-cv-1591-JR, 2022 WL 1538645 (D. Or. May 16, 2022)...............23, 48

*Harris v. Quinn*,
  573 U.S. 616 (2014)..............................................................................25

*Janus v. AFSCME*,
  -- U.S. --, 138 S. Ct. 2448 (2018) .............................................*passim*

*Keller v. State Bar of California*,
  496 U.S. 1 (1990)...................................................................*passim*

*Lathrop v. Donohue*,
  367 U.S. 820 (1961)...............................................................*passim*

iv

*Luna v. Hansen & Adkins Auto Transp., Inc.*,
  956 F.3d 1151 (9th Cir. 2020) ...........................................................20

*McDonald v. Longley*,
  4 F.4th 229 (5th Cir. 2021) ........................................................*passim*

*Pye v. Mitchell*,
  574 F.2d 476 (9th Cir. 1978) .............................................................36

*Roberts v. U.S. Jaycees*,
  468 U.S. 609 (1984)....................................................29, 42, 44, 45

*Schell v. Chief Justice & Justices of Oklahoma Supreme Court*,
  11 F.4th 1178 (10th Cir. 2021), *cert. denied sub nom. Schell v.
  Darby*, 142 S. Ct. 1440 (2022) ............................................23, 24, 28

*Soc. Techs. LLC v. Apple Inc.*,
  4 F.4th 811 (9th Cir. 2021) ...............................................................21

*Taylor v. Buchanan*,
  4 F.4th 406, 408-10 (6th Cir. 2021), *cert. denied sub nom. Taylor
  v. Heath*, 142 S. Ct. 1441 (2022) .................................................23, 24

**Statutes**

28 U.S.C. § 1291 ...................................................................................4

28 U.S.C. § 1331 ...................................................................................4

ORS 9.005 ..............................................................................................5

ORS 9.006 ..............................................................................................5

ORS 9.010 ..............................................................................................4

ORS 9.080 ..............................................................................................5

ORS 9.112 ..............................................................................................5

ORS 9.160 ..............................................................................................4

ORS 9.191 ..............................................................................................4

ORS 9.200 ..............................................................................................4

ORS 9.210 ................................................................................................5

ORS 9.490 ................................................................................................5

**Other Authorities**

U.S. Const. amend. I ......................................................................*passim*

U.S. Const. amend. XI ..............................................................................3

# **INTRODUCTION**

The United States District Court for the District of Oregon correctly granted summary judgment dismissing Plaintiffs-Appellants' sole claim for violation of their First Amendment right to freedom of association. In April 2018, the Oregon State Bar ("OSB") published two statements in its monthly magazine for bar members (the *Bar Bulletin*) that condemned white nationalist violence after a man shouted racist, anti-Muslim threats at two women, and then fatally stabbed two other people on a Portland train. Appellant Daniel Crowe, an OSB member at the time, disagreed with the viewpoint presented in those statements and demanded a refund of his membership fees attributed to those statements. The OSB refunded fees to Crowe and other members of the OSB who requested refunds. Despite receiving his refund, Crowe formed the Oregon Civil Liberties Attorneys ("ORCLA")—the other Plaintiff-Appellant in this case[1]—and filed this lawsuit seeking to declare mandatory membership in the OSB unconstitutional based on the OSB's publication of the two April 2018 statements.

As part of a prior appeal, this Court held that Appellants could maintain their lawsuit against the OSB on very narrow grounds. Specifically, this Court held that Appellants could not state a viable First Amendment claim based on a compelled

---

[1] Appellants' lawsuit initially named Lawrence Peterson as a plaintiff, but the District Court held that his claim was moot because Peterson left the practice of law in 2019 and Peterson has not joined the present appeal.

speech theory because the OSB's process for refunding bar fees adequately protected Appellants' free speech rights as a matter of law. *Crowe v. Or. State Bar*, 989 F.3d 714, 727 (9th Cir. 2021). This Court, however, remanded Appellants' sole remaining claim for violation of their free association rights on narrow grounds: directing the District Court to decide "whether the First Amendment tolerates mandatory membership itself—independent of compelled financial support—in an integrated bar that engages in nongermane political activities." *Id.* at 729.

After a year of litigation, and based on a full factual record which expanded Appellants' claim to include certain legislative activities of the OSB as well as the two April 2018 statements, the District Court granted summary judgment in favor of the OSB. Specifically, the District Court found that: (1) the United States Supreme Court's germaneness standard adopted in *Keller v. State Bar of California*, 496 U.S. 1, 14 (1990), which assesses whether an integrated bar association's activities are reasonably related to its interest in regulating the legal profession and improving the quality of legal services, applied to Appellants' free association claim; (2) Appellants failed to establish that the OSB engaged in any nongermane legislative activity; and (3) although a genuine issue of material fact existed with respect to the germaneness of one of the statements from the April 2018 *Bar Bulletin*, that statement did not constitute a major activity of the OSB under *Lathrop v. Donohue*,

367 U.S. 820 (1961), and therefore did not reach the threshold for a First Amendment violation.

This Court should affirm the District Court's decision. The District Court correctly held that *Keller* and *Lathrop* provide the relevant legal standards for Appellants' claim. The District Court also correctly applied the *Keller* standard in finding that the OSB's legislative activity and its statement in the April 2018 *Bar Bulletin* were germane. Although the District Court erred in finding an issue of fact with respect to the other statement in the April 2018 *Bar Bulletin*, it correctly held that a single nongermane activity does not constitute a First Amendment violation. In addition, summary judgment was appropriate here because Appellants failed to present any record evidence that they suffered an actual injury to their expressive, associational rights. Accordingly, for all of these reasons, the District Court properly granted summary judgment to the OSB and this Court should affirm that decision.

## JURISDICTIONAL STATEMENT

The OSB disputes that the District Court or this Court has subject matter jurisdiction over the OSB based on the Eleventh Amendment, and preserves its jurisdictional defense on that basis. However, because this Court already rejected that argument, the OSB does not raise that argument again in this appeal. *See Crowe*, 989 F.3d at 733. In all other respects, the OSB agrees with Appellants' jurisdictional

statement that the District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1331, and that this Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## ISSUE PRESENTED

Whether the District Court properly granted summary judgment to the OSB where Appellants failed to establish any disputed material facts, failed to establish that the OSB engaged in nongermane activity, and failed to establish any material infringement on their freedom of association separate from compelled payment of membership fees.

## STATEMENT OF THE CASE

## I. RELEVANT FACTUAL BACKGROUND

### A. The OSB is authorized to regulate the legal profession, improve the quality of legal services in Oregon, and advance a fair and inclusive justice system, among other things.

The OSB "is a public corporation and an instrumentality of the Judicial Department of the government of the State of Oregon." ORS 9.010(2). The OSB is an integrated bar, meaning that every lawyer in Oregon must join the OSB as an active member and pay annual fees to practice law in the state. ORS 9.160, 9.191, 9.200; *see also Keller*, 496 U.S. at 5 (noting an integrated bar is "an association of attorneys in which membership and dues are required as a condition of practicing law").

The mission of the OSB and its Board of Governors is to serve the public interest by "[r]egulating the legal profession and improving the quality of legal

services," "[s]upporting the judiciary and improving the administration of justice," and "[a]dvancing a fair, inclusive and accessible justice system." ORS 9.080(1)(a)–(c). The OSB carries out its mission largely under the oversight, and subject to the approval of, the Oregon Supreme Court. *See, e.g.*, ORS 9.006, 9.210. Subject to the Oregon Supreme Court's review and approval, the Board of Governors regulates attorneys in Oregon, including by formulating the Oregon Rules of Professional Conduct, minimum continuing legal education requirements, and the rules of procedure relative to admission, discipline, resignation, and reinstatement of bar members. ORS 9.005(7), 9.112, 9.490.

The OSB also provides organizational infrastructure for several "Sections," such as the "Administrative Law" or "Military and Veterans Law" Sections. (SER-43–44.) These voluntary Sections provide OSB members with an interest in specific substantive areas of the law a forum for improving legal skills and knowledge, improving the law and administration of justice, exchanging ideas and information, and engaging in pro bono services and other activities to increase access to justice. (*Id.*; 2-ER-70 § 14.1.)

In carrying out its mission, the OSB also publishes the *Bar Bulletin*, a magazine with articles about the practice of law, legal trends, lawyer discipline, and developments in case law and legislation. Additionally, the OSB provides limited support for legislative activities under its Bylaws. (2-ER-67 § 11.1.) The OSB's

official policy is to not expend member fees on activities that are not germane to its mission. (SER-59.) Specifically, that policy provides that "mandatory dues cannot be used to advance political or ideological positions that are not germane to . . . regulating the legal profession and improving the quality of legal services." (SER-64.) As a result, the OSB's Bylaws provide that the OSB's communications, including its publication of the *Bar Bulletin* and its legislative advocacy, must all be germane to its mission. (2-ER-66–67 §§ 10.1, 11.1.)

**B.      As part of its duties, the OSB implemented a Legislative Policy which Appellants admit is facially constitutional.**

To carry out its mission, the OSB adopted a Legislative and Public Policy ("Legislative Policy") as part of its Bylaws to guide its legislative advocacy. (2-ER-67 § 11.1.) Appellants admit the Legislative Policy is germane and permissible on its face. (SER-76–77.)

Under the Legislative Policy, the OSB may engage in legislative advocacy concerning only nine specific issue areas related to the regulation of the legal profession and improving the quality of legal services. (2-ER-67 § 11.1.) Specifically, the OSB is permitted to engage in legislative activity concerning: (1) regulating and disciplining lawyers; (2) improving the functioning of the courts including issues of judicial independence, fairness, efficacy, and efficiency; (3) making legal services available to society; (4) regulating lawyer trust accounts; (5) the education, ethics, competence, integrity, and regulation of the legal profession;

(6) providing law improvement assistance to elected and appointed government officials; (7) issues involving the structure and organization of federal, state, and local courts in or affecting Oregon; (8) issues involving the rules of practice, procedure, and evidence in federal, state, or local courts in or affecting Oregon; or (9) issues involving the duties and functions of judges and lawyers in federal, state, and local courts in or affecting Oregon. (*Id.*)

Pursuant to the Legislative Policy, the OSB engages in a comprehensive review process to ensure that all legislation for which the OSB advocates is germane and relates to either regulating the legal profession or improving the quality of legal services in the state. (SER-30 ¶ 4.) The OSB works with the Board of Governors' Public Affairs Committee to develop the policies that guide the OSB's Public Affairs staff's work and recommend positions the OSB should take on public policy issues affecting the OSB and the legal profession. (*Id.*) Each legislative session, the OSB develops a list of priority legislative proposals. (SER-31 ¶ 6.) The OSB only considers offering support to legislation that complies with the OSB's statutory mission and Legislative Policy, which are both designed to comply with the First Amendment and *Keller*'s germaneness requirements. (*Id.*)

The OSB Public Affairs staff then presents a list of proposed legislation to support to the Board of Governors' Public Affairs Committee and the OSB's general counsel, who both review the subject matter of the legislation to confirm that the

legislation complies with the First Amendment. (SER-31 ¶ 6.) The Public Affairs Committee then reviews the legislation that passes the *Keller* evaluation for any topics that would be unduly divisive among the OSB's diverse membership. (SER-31 ¶ 7.) If the Committee determines the legislation would be unduly divisive, the OSB declines to support the legislation. (*Id.*) Throughout each year's legislative session, the Public Affairs Committee holds meetings every two weeks to continually review and evaluate the germaneness of any legislation for which it advocates. (SER-31 ¶ 8.)

### C. The OSB followed its Legislative Policy in supporting the legislation challenged by Appellants.

Each of the OSB's acts of legislative advocacy identified by Appellants at summary judgment went through the *Keller* review process described above. (SER-31–32 ¶ 9.) As part of that review, the OSB considered: (1) whether each relevant bill concerned one of the nine specified topics in the OSB's Legislative Policy; and (2) whether its advocacy complied with a compelling state interest of (a) regulating the practice of law or (b) improving the quality of legal services. (*Id.*)

Following that review, the OSB affirmatively found that each legislative activity met that standard because it supported the judiciary, improved the administration of justice, or advanced a fair, inclusive, and accessible justice system, as described in the chart below:

| Legislation (Year) | Advocating Entity | Topic | Constitutional Purpose |
|---|---|---|---|
| SB 180 (2021) | OSB | Added exemption from general rule that attorneys may not communicate directly with represented persons by allowing an insurer to send notice of a settlement directly to a claimant and added protections for the claimant if their attorney misappropriated an insurance settlement. (SER-32 ¶ 10.) | Directly regulated attorney conduct, regulated the practice of law, and improved the administration of justice. (SER-32 ¶ 10.) |
| SB 182 (2021) | Estate Planning and Admin. Section of the OSB | Adjusted the process an attorney must follow when destroying wills and modified when spouses can act with the power of attorney. (SER-28 ¶ 15.) | Directly regulated attorney conduct in destroying wills, regulated the practice of law, and increased access to justice. (SER-28 ¶ 15.) |
| SB 768 (2021) | OSB | Modified multiple provisions of OSB's governing statutes. (SER-29 ¶ 17.) | Directly regulated the legal profession and its governing body. (SER-29 ¶ 17.) |
| SB 358 (2019) | OSB | Reordered and clarified rules related to data sharing between the Department of Revenue and the OSB, and modified other provisions relating directly to the OSB. (SER-29–30 ¶ 18.) | Directly regulated the legal profession and its governing body. (SER-29–30 ¶ 18.) |

| Legislation (Year) | Advocating Entity | Topic | Constitutional Purpose |
|---|---|---|---|
| SB 181 (2021) | Consumer Law Section of the OSB | Added a factor to the list of factors considered by a court when awarding pro bono attorney fees. (SER-34–35 ¶ 18.) | Encouraged attorneys to take pro bono cases, thereby increasing access to justice. (SER-34–35 ¶ 18.) |
| SB 183 (2021) | Indian Law Section of the OSB | Removed obstacles that prevented adequate and appropriate enforcement of tribal protection orders and foreign restraining orders by establishing a statewide process for seeking enforcement of an order issued from a tribal court. (SER-33 ¶ 12.) | Supported the judiciary, improved the administration of justice, and increased access to justice for those seeking to enforce tribal court judgments. (SER-33 ¶ 12.) |
| SB 185 (2021) | Nonprofit Organizations Section of the OSB | Clean-up bill that moved the definition of directors to the correct section of the statutes governing nonprofits. (SER-34 ¶ 17.) | Increased access to justice by clarifying a section of law that was mistakenly enacted and improved the quality of legal services. (SER-34 ¶ 17.) |
| SB 295 (2021) | OSB | Restricted aid and assist statutes to increase the use of community-based services for defendants' competency restoration. (SER-35 ¶ 20.) | Added clarity to statute about when and how a criminal defendant may be referred to the Oregon State Hospital, thereby increasing access to justice and improving the quality of legal services. (SER-35 ¶ 20.) |

| Legislation (Year) | Advocating Entity | Topic | Constitutional Purpose |
|---|---|---|---|
| SB 297 (2021) | OSB | Updated the definition of police officers to include judicial marshals for purposes of inclusion in the state retirement system. (SER-34 ¶ 15.) | Directly supported the judiciary and improved the administration of justice. (SER-34 ¶ 15.) |
| SB 513 (2021) | OSB | Added a half-credit of civics education to high school graduation requirements beginning in the 2025–26 school year. (SER-34 ¶ 16.) | Increased access to justice. (SER-34 ¶ 16.) |
| SB 829 (2021) | Debtor-Creditor Section of OSB | Clean-up bill that reorganized and clarified the process for eviction in foreclosure proceedings. (SER-35 ¶ 19.) | Increased access to justice and improved quality of legal services by clarifying law that even judges found confusing. (SER-35 ¶ 19.) |
| SB 359 (2019) | Business Law Section of the OSB | Created a process for ratifying certain defective actions of shareholders or corporations to correct procedural mistakes so as to not cloud the legal effect of any cascading business decisions. (SER-35 ¶ 21.) | Increased access to justice and improved the quality of legal services. (SER-35 ¶ 21.) |
| SB 360 (2019) | Nonprofit Organizations Law Section of the OSB | Updated the Nonprofit Corporations Act to modernize and simplify the governance rules for nonprofits. (SER-36 ¶ 23.) | Improved the quality of legal services and increased access to justice. (SER-36 ¶ 23.) |

| Legislation (Year) | Advocating Entity | Topic | Constitutional Purpose |
|---|---|---|---|
| SB 361 (2019) | Sustainable Future Section of the OSB | Allowed for trust administrators to consider sustainability factors when administering a trust. (SER-36–37 ¶ 24.) | Increased access to justice and improved the quality of legal services. (SER-36–37 ¶ 24.) |
| HB 2459 (2019) | Debtor-Creditor Section of the OSB | Allowed lienholders to ask another lienholder for an itemized statement that includes the amount necessary to payoff the other lien and any per diem interest that may accrue in light of privacy laws that had created confusion for attorneys with respect to when lienholders can disclose certain information. (SER-36 ¶ 22.) | Improved the quality of legal services in Oregon and created a mechanism for judicial oversight of certain requests. (SER-36 ¶ 22.) |
| HB 4008 (2018) | OSB | Prohibited courts from considering race or ethnicity in calculating the future earning capacity of a person in a civil action. (SER-37 ¶ 25.) | Improved the administration of justice and increased access to justice. (SER-37 ¶ 25.) |
| HB 4010 (2018) | None | Established an eleven member Task Force on Addressing Racial Disparities in Home Ownership (SER-37 ¶ 26.) | The OSB did not support this bill. (SER-37 ¶ 26.) |

**D.    The OSB published the April 2018 *Bar Bulletin*, including the two statements challenged by Appellants, for germane purposes.**

During his membership in the OSB, Crowe challenged and requested refunds for the portion of his OSB membership fees used to publish two statements in the OSB's April 2018 issue of the *Bar Bulletin*. (3-ER-350–51; SER-12–14; SER-24–25.) Those statements were published after a man shouted racist and anti-Muslim slurs at two women and fatally stabbed two other persons on Portland's MAX train. (*See* 3-ER-350–51.)

The first statement ("OSB Statement") was titled a "Statement on White Nationalism and Normalization of Violence" and was signed by six individuals associated with the OSB or its Board of Governors made directly in response to "the attacks on Portland's MAX train" and the need to "condemn the proliferation of speech that incites such violence." (3-ER-350.) "[M]indful of the breadth of perspectives encompassed in [the OSB's] membership," the OSB Statement reaffirmed that the OSB would "continue to focus specifically on those issues that are directly within [its] mission, including the promotion of access to justice, the rule of law, and a healthy and functional judicial system that equitably serves everyone." (*Id.*) The OSB Statement condemned "the current climate of violence, extremism and exclusion [that] gravely threatens all of the above." (*Id.*) And in the spirit of "remain[ing] committed to equity and justice for all," the OSB Statement recognized the "courageous work done by specialty bars throughout the state." (*Id.*)

The second statement ("Affinity Bar Statement") was published by the OSB on the page next to the OSB Statement with a similar border, and was titled the "Joint Statement of the Oregon Specialty Bar Associations Supporting the Oregon State Bar's Statement on White Nationalism and Normalization of Violence." (3-ER-351.) The Affinity Bar Statement was signed by representatives of seven affinity bars (also known as specialty bars) in Oregon, including the Oregon Asian Pacific American Bar Association, the Oregon Filipino American Lawyers Association, the Oregon Chapter of the National Bar Association, the Oregon Hispanic Bar Association, the Oregon Women Lawyers, OGALLA–The LGBT Bar Association of Oregon, and the Oregon Minority Lawyers Association. (*Id.*) The Affinity Bar Statement also aimed to "condemn the violence that has occurred as a result of white nationalism and white supremacy." (*Id.*) The Affinity Bar Statement, which the OSB did not endorse or sign, stated in relevant part

> Through the recent events from the Portland MAX train attacks to Charlottesville, we have seen an emboldened white nationalist movement gain momentum in the United States and violence based on racism has become normalized. President Donald Trump, as the leader of our nation, has himself catered to this white nationalist movement, allowing it to make up the base of his support and providing it a false sense of legitimacy. . . .

> As attorneys who lead diverse bar associations throughout Oregon, we condemn the violence that has occurred as a result of the white nationalism and white supremacy . . . [W]e condemn speech that incites violence[.]

(*Id.*)

The OSB published both statements to demonstrate its commitment to its mission to advance a fair and inclusive legal profession, including persons from underrepresented backgrounds, and to increase public trust for lawyers, the legal profession, the judiciary, and the judicial system as a whole. (SER-182 ¶ 6.) The OSB published the statements after hearing concerns from lawyers about the rise in race-based discrimination, bias, and violence affecting lawyers from underrepresented backgrounds. (*Id.*)

### E.   Appellants stopped practicing law in Oregon almost immediately after filing this lawsuit.

Crowe, along with two other members, founded ORCLA in May 2018 to organize and fund this litigation. (SER-116–18.) ORCLA was administratively dissolved by the Oregon Secretary of State. (SER-117–18.)[2] No record evidence exists that ORCLA held any meetings, conducted any activities, or had any viewpoints other than supporting this litigation. (SER-117; SER-116.)

In January 2019, within weeks of filing this litigation, Crowe transitioned his OSB membership to "Pro Bono Status" and moved to Florida. (SER-73.) No record evidence exists that Crowe practiced law in any state, including Oregon, since 2019. (*See* SER-74–75.)

---

[2] Appellants reinstated ORCLA in October 2022 during summary judgment briefing in the District Court, but it was again administratively dissolved in July 2023.

While an active member of the Oregon State Bar, Crowe served as a board member of the Military and Veterans Law Section ("Veterans Section") of the OSB. (SER-94; SER-127–79.) In that role, Crowe reviewed proposed legislation and advocated for the Veterans Section to take positions on legislation affecting veterans. (SER-93; SER-127–79.) Crowe agrees that membership in the Veterans Section is voluntary and a section "can't speak for the Bar." (2-ER-109–11.)

## II.   PROCEDURAL BACKGROUND

### A.   Appellants initially asserted free speech and free association claims arising from the April 2018 *Bar Bulletin* statements.

Appellants filed this lawsuit in December 2018. (3-ER-334–49.) Appellants asserted three claims for violations of their First Amendment rights to freedom of association and freedom of speech: (1) compelled speech arising from mandatory bar fees (First Claim for Relief); (2) failure to provide a right to affirmatively consent to use of fees for certain activities (Second Claim for Relief); and (3) compelled membership in the OSB (Third Claim for Relief). (3-ER-343–47.)

### B.   This Court affirmed the dismissal of Appellants' free speech claim, but remanded the free association claim on narrow grounds.

The District Court initially dismissed Appellants' complaint in its entirety. *Crowe*, 989 F.3d at 720. This Court affirmed the District Court's dismissal of Appellants' free speech claims (First and Second Claims for Relief), concluding that the OSB's process for refunding bar dues adequately protected Appellants' free speech rights as a matter of law. *Id.* at 727. For the remaining freedom of association

claim (Third Claim for Relief), this Court held that, unlike their other claims, Appellants' associational claim was not precluded by clear precedent from the United States Supreme Court and remanded for additional proceedings. *Id.* at 729.

This Court framed the District Court's inquiry on remand as "whether the First Amendment tolerates mandatory membership itself—independent of compelled financial support—in an integrated bar that engages in nongermane political activities." *Id.* Specifically, this Court explained that, on remand, the district court would need to determine whether *Janus v. AFSCME*, -- U.S. --, 138 S. Ct. 2448, (2018)—which applied exacting scrutiny to a free association claim to determine whether "a compelling state interest [] cannot be achieved through means significantly less restrictive of associational freedoms," *id.* at 2465—"supplies the appropriate standard for Plaintiffs' free association claim and, if so, whether OSB can satisfy its 'exacting scrutiny standard.'" *Crowe*, 989 F.3d at 729.

### C. The District Court granted summary judgment to OSB on Appellants' remaining associational claim.

On remand, the parties engaged in discovery on Appellants' associational claim and then filed cross-motions for summary judgment. (*See* 1-ER-3–4.) After detailed briefing on both motions before the Magistrate Judge and the District Court, the District Court granted the OSB's motion for summary judgment, denied Appellants' motion for summary judgment, and entered final judgment dismissing

Appellants' sole remaining claim for violation of their associational rights under the First Amendment.

In granting the OSB's motion, the District Court explained that its task on remand was "to resolve what standard governs an associational rights claim in this context, whether the 'germaneness' standard articulated in *Keller* . . . for speech in the context of mandatory bar dues also applies to an associational rights claim, and how the OSB's activities fare under this claim." (1-ER-4.) With respect to the standard, the District Court "concluded that the applicable standard of review for an associational rights claim in this context is the germaneness framework," and "a claim asserting that simply being required to participate in an integrated bar violates associational rights is insufficient and Plaintiffs must instead show nongermane activity that rises to the level of a constitutional violation." (*Id.*)

Applying the above standard to the OSB's legislative advocacy, the District Court determined that Appellants failed to establish a genuine dispute of material fact regarding whether the OSB engaged in nongermane behavior. (1-ER-9.) Instead, the District Court determined that each challenged legislative activity related to the OSB's compelling interest because the "entirety is within the spectrum of improving the quality of legal services or regulating the legal profession," and was therefore germane and constitutional under *Keller*. (1-ER-9–11.) In making that finding, the District Court disagreed with the Fifth Circuit's discussion in *McDonald v. Longley*,

4 F.4th 229 (5th Cir. 2021), that advocating for changes to a state's "substantive" law is automatically nongermane. (1-ER-10.)

With respect to the two statements published in the *Bar Bulletin*, the District Court determined that the OSB Statement was germane under the *Keller* standard because it was "aimed at creating a fair and equal legal profession . . . which is a form of regulating the legal profession" and "also is focused on access to justice, which is germane." (1-ER-12.) As to the Affinity Bar Statement, the District Court determined that there was "an issue of fact whether this statement was nongermane" under *Keller*, but the Court held that, under *Lathrop*, "a single statement (or even two statements)" that qualifies as nongermane activity does not violate the "acceptable threshold for nongermane activity," and therefore did not violate Appellants' freedom of association. (1-ER-12–13.)

## SUMMARY OF ARGUMENT

This Court provided a narrow framework for Appellants to potentially establish a free association claim on remand and Appellants failed to meet that burden with respect to the OSB's legislative advocacy, the OSB Statement, or the Affinity Bar Statement. As the District Court correctly held, the Supreme Court's decisions in *Keller* and *Lathrop* provide the proper framework for Appellants' claim and that standard was not altered by *Janus*. Under the *Keller* standard, the District Court correctly held that the OSB's legislative advocacy and the OSB Statement are

germane (and therefore constitutional) because they reasonably related to the OSB's activities of regulating the legal profession or improving the practice of law.

As to the Affinity Bar Statement, the District Court erred in concluding that an issue of fact existed as to the germaneness of that statement because the Affinity Bar Statement, like the OSB Statement, was also germane as a matter of law. Nevertheless, the District Court correctly held that even if the Affinity Bar Statement was nongermane, a single nongermane activity is insufficient to establish an associational violation as a matter of law. And finally, although the District Court never needed to reach this issue, Appellants failed to present any evidence at summary judgment showing that they suffered an associational injury independent of compelled financial support of the OSB. Accordingly, the District Court correctly granted the OSB's motion for summary judgment and denied Appellants' competing motion for summary judgment, and this Court should affirm its decision.

## STANDARD OF REVIEW

The parties agree that this Court reviews a district court's grant of summary judgment de novo. *Luna v. Hansen & Adkins Auto Transp., Inc.*, 956 F.3d 1151, 1152 (9th Cir. 2020). The OSB, however, disagrees with Appellants' argument that "[t]his Court can and should vacate the judgment entered against Appellants, enjoin enforcement of Oregon's mandatory bar scheme, and remand for further proceedings consistent with this Court's decision." (Opening Br. at 22.)

On review, the appellate court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether any genuine issues of material fact exist and whether the district court correctly applied the relevant substantive law. *See Soc. Techs. LLC v. Apple Inc.*, 4 F.4th 811, 816 (9th Cir. 2021). Summary judgment may be affirmed on any ground supported by the record. *See Cruz v. Nat'l Steel & Shipbuilding Co.*, 910 F.3d 1263, 1270 (9th Cir. 2018).

## ARGUMENT

I.    **The District Court correctly concluded that *Keller* and *Lathrop* (not *Janus*) are the appropriate standards to apply to Appellants' First Amendment claim.**

The District Court correctly concluded that the germaneness inquiry from *Keller*—coupled with the "major" activity threshold from *Lathrop*—is the proper framework to apply to Appellants' free association claim against the OSB. In the prior appeal, this Court directed the District Court to determine three issues: (1) "whether *Janus* supplies the appropriate standard for [Appellants'] free association claim"; (2) "whether *Keller*'s instructions with regards to germaneness . . . are even relevant to the free association inquiry"; and (3) "whether the First Amendment tolerates mandatory membership itself—independent of compelled financial support—in an integrated bar that engages in nongermane political activities." *See Crowe*, 989 F.3d at 729. As further explained below, the District Court followed that

guidance and properly granted summary judgment in the OSB's favor. Accordingly, this Court should affirm its decision.

### A.   *Janus* did not alter *Keller*'s germaneness framework for integrated bar associations.

The District Court correctly held that the "germaneness framework" from *Keller* is the appropriate standard for evaluating Appellants' associational claim. (*See* ER 4.) Under *Keller*, an integrated bar association complies with the First Amendment when the bulk of the bar's activities are "reasonably incurred for the purpose of regulating the legal profession or 'improving the quality of the legal service available to the people of the State.'" *See Keller*, 496 U.S. at 14 (quoting *Lathrop*, 367 U.S. at 843). Appellants agree that *Keller* provides "helpful guidance," but argue that, following *Janus*, this Court should "apply *Keller*'s germaneness standard with exacting scrutiny"—which apparently requires something more than germaneness—"in determining whether OSB violated Appellants' free association rights." (*See* Opening Br. at 19–20, 23.) Appellants are wrong and the District Court properly rejected Appellants' argument as inconsistent with binding authority from the Supreme Court and federal appellate courts.

This is the second time the District Court has considered whether *Janus* altered *Keller*'s germaneness standard by requiring the application of "exacting scrutiny." Following this Court's prior remand decision, the plaintiffs in the related case (*Gruber v. Oregon State Bar*) immediately moved for summary judgment

arguing that "the OSB's compulsory membership requirement violates their associational rights" as a matter of law under the exacting scrutiny standard from *Janus* because, other licensing structures "would be equally sufficient and less burdensome" on their First Amendment rights. (1-ER-4.) *See also Gruber v. Oregon State Bar*, No. 3:18-cv-1591-JR, 2022 WL 1538645, at *2 (D. Or. May 16, 2022). The District Court rejected that argument. In doing so, the District Court relied on the Tenth Circuit's decision in *Schell v. Chief Justice & Justices of Oklahoma Supreme Court*, 11 F.4th 1178 (10th Cir. 2021), *cert. denied sub nom. Schell v. Darby*, 142 S. Ct. 1440 (2022), which carefully reviewed the Supreme Court's holdings in *Keller* and *Janus*, and ultimately determined that *Janus* and its "exacting scrutiny" standard did not displace *Keller* and its germaneness standard, even for associational rights claims. *Gruber*, 2022 WL 1538645, at *3. The District Court also relied on consistent decisions from the Seventh and Sixth Circuits which each held that *Janus* did not displace *Keller*. *See, e.g.*, *File v. Martin*, 33 F.4th 385, 392 (7th Cir. 2022) (noting *Keller* has not been overruled and that the Supreme Court "has turned away several additional opportunities to revisit *Keller* based on *Janus*"), *cert. denied sub nom. File v. Hickey*, 143 S. Ct. 745 (2023); *Taylor v. Buchanan*, 4 F.4th 406, 408–10 (6th Cir. 2021) ("*Lathrop* and *Keller* doom [the plaintiff's] First Amendment claims."), *cert. denied sub nom. Taylor v. Heath*, 142 S. Ct. 1441 (2022).

Here, when the District Court considered the parties' cross-motions for summary judgment in this case, it again adopted the reasoning from *Schell* and "concluded that the applicable standard of review for an associational rights claim in this context is the germaneness framework" without any additional requirements or modifications from *Janus.* (1-ER-4.) That was legally correct.

Appellants argue that the District Court erred in relying on *Schell* because "unlike here, the Tenth Circuit [in *Schell*] was not assessing the merits of the plaintiff's claim, only whether the plaintiff had alleged an association claim sufficient to survive a motion to dismiss." (Opening Br. at 22–23.) Appellants' attempt to distinguish *Schell* is misplaced. Although the Tenth Circuit's decision followed a motion to dismiss, rather than summary judgment, the court's analysis of the relevant Supreme Court authorities focused on the legal standard to prevail on (not merely to sufficiently plead) an associational claim under the First Amendment. *See Schell*, 11 F.4th at 1190–91, 1195 (noting that "*Janus* did not replace [*Keller*'s] longstanding test with exacting scrutiny" and "if defendants seek summary judgment, the district court will need to apply the test from *Keller* to determine whether the articles are germane to the accepted purposes of the state bar").

///

///

Appellants are also incorrect that the exacting scrutiny standard from *Janus* requires a bar association to not engage in any nongermane activities because "twenty other states already regulate the licensing and discipline of lawyers without forcing them to join and pay for a state bar that engages in nongermane activities." (*See* Opening Br. at 26.) In *Lathrop*, the Supreme Court held that Wisconsin's mandatory bar scheme did not violate the plaintiff's freedom of association despite recognizing that twenty-five other states did not have integrated bars at the time. *See Lathrop*, 367 U.S. at 848 & n.1 (Harlan, J., concurring). Likewise, in *Morrow v. State Bar of California*, this Court similarly held that California's mandatory bar did not violate its members' freedom of association despite specifically acknowledging that other states employed alternative regulatory schemes. 188 F.3d 1174, 1175–77 (9th Cir. 1999). In addition, the Supreme Court previously stated the germaneness standard from *Keller* "fits comfortably within the [exacting scrutiny] framework" for First Amendment claims affecting bar associations. *Harris v. Quinn*, 573 U.S. 616, 655 (2014). In other words, the District Court correctly analyzed the relevant authorities in holding that the *Keller* germaneness framework (and nothing more) remains the appropriate standard for Appellants' associational claim.

**B.    *Janus* did not alter *Lathrop*'s materiality requirement for nongermane conduct by integrated bar associations.**

The District Court also correctly held that, under *Lathrop*, when "only some degree of the integrated bar's activity was potentially improper, and not the 'bulk'

or 'major' portion of the bar's activity," no First Amendment violation exists. (1-ER-11 (citing *Lathrop*, 367 U.S. at 843, 839).) Appellants argue that even if *Keller*'s germaneness standard provides the relevant framework for their associational claim, the exacting scrutiny standard from *Janus* required the District Court to hold that any nongermane conduct—regardless of magnitude—constitutes a First Amendment violation based on the Fifth Circuit's decision in *McDonald*. (*See* Opening Br. at 23–24.) Appellants are wrong again. As the District Court correctly held, the Supreme Court's decision in *Lathrop* confirms that nongermane conduct only infringes a bar member's associational rights when it constitutes the "bulk" or "major" activity of the integrated bar. (1-ER-11.) Accordingly, because *Lathrop* remains binding precedent and was also not overruled by *Janus*, this Court should reject Appellants' argument and affirm the District Court.

In *Lathrop*, a Wisconsin attorney sued the state bar contending that it violated his rights to free speech and free association because he was compelled to become a dues-paying member of the bar to practice law in Wisconsin. 367 U.S. at 821–24 (plurality). The Wisconsin Supreme Court ruled against the plaintiff, and the Supreme Court affirmed, with seven justices concluding that the plaintiff's compelled membership in the bar did not violate his right to free association. *See id.* at 843 (plurality); *id.* at 848–50 (Harlan, J., concurring); *id.* at 865 (Whittaker, J., concurring). As part of that decision, the plurality opinion reasoned that "the bulk"

of the state bar's activities were geared towards "improving the quality of the legal service available to the people of the State," which was undoubtedly "a legitimate end of state policy." *Id.* at 843. Thus, the opinion concluded that Wisconsin may constitutionally require attorneys—as the "subjects and beneficiaries" of the bar's regulatory activities—to support those activities through dues-paying membership even if the bar engages in some minor legislative advocacy on ideological issues. *Id.* In other words, the Supreme Court expressly held that whether a bar association's activity infringes on a member's associational rights depends on whether those activities constitute the "bulk" or "major" portion of the bar's activities. *Id.*

Appellants' brief ignores *Lathrop*. Instead, Appellants argue that the only way for this Court to "faithfully apply" both *Keller* and *Janus* is to hold that "if a mandatory bar association engages in non-germane activities, then compelled membership fails exacting scrutiny." (Opening Br. at 20.) As described above, *Janus* did not displace or conflict with *Keller*, and therefore this Court is not required to reconcile any conflicting authorities to affirm the District Court. Instead, the only inconsistency exists in Appellants' argument—which entirely ignores the Supreme Court's guidance in *Lathrop* that expressly allows an integrated bar association to engage in some *de minimis* nongermane conduct without violating the First Amendment.

The District Court also did not err in rejecting the Fifth Circuit's conclusion in *McDonald* that "[c]ompelled membership in a bar association that engages in non-germane activities . . . fails exacting scrutiny." *See McDonald*, 4 F.4th at 246. First, although the Fifth Circuit recognized that *Lathrop* allows nongermane legislative activity where it was "not the major activity of the State Bar," it failed to explain how its conclusion could be reconciled with *Lathrop*. *See id* at 244 (quoting *Lathrop*, 367 U.S. at 839). Second, *McDonald* did not involve allegedly *de minimis* nongermane activities, so the court was not presented with that issue. As a result, the District Court was correct in ignoring *McDonald*'s unsupported conclusion and relying instead on *Lathrop*. *See, e.g.*, *Taylor*, 4 F.4th at 407–09 & n.1 (holding that *Lathrop* and *Keller* control); *Schell*, 11 F.4th at 1195 n.11 (noting under *Lathrop* that "[a] potential open issue is to what degree, in quantity, substance, or prominence, a bar association must engage in non-germane activities in order to support a freedom-of-association claim based on compelled bar membership"); *Boudreaux v. Louisiana State Bar Ass'n*, 620 F. Supp. 3d 440, 457 (E.D. La. 2022) (rejecting *McDonald*'s conclusion based on *Lathrop*, and noting "the constitutional viability of a mandatory bar association [should not] hinge on a single non-germane tweet").

Requiring a threshold of nongermane activity for a violation of a person's freedom of association also comports with the main inquiry of freedom of association challenges, *i.e.*, whether the forced association meaningfully infringes or

"significantly affects" the ability of the protesting party's ability to freely associate (or disassociate) with its desired views. *See, e.g.*, *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 655–56 (2000) (determining that the presence of a gay scoutmaster as a leader would "significantly affect" the Boy Scouts' expressive association); *Roberts v. U.S. Jaycees*, 468 U.S. 609, 627–28 (1984) (determining that forced association with women, despite causing "some incidental abridgment" of the Jaycee's First Amendment rights, would not have an effect on "the organization's public positions" and did not violate the Jaycees' freedom of association in the absence of a "far more substantial" showing); *Blair v. Bethel Sch. Dist*., 608 F.3d 540, 544 (9th Cir. 2010) ("[D]e minimis deprivations of benefits and privileges on account of one's speech do not give rise to a First Amendment claim."). For example, if a bar association engages in only one or two nongermane activities, it defies common sense that its member would be associated with (and constitutionally harmed by) that *de minimis* activity, particularly absent any compelled dues. Thus, because this Court required Appellants to establish a constitutional injury "independent of compelled financial support," it is even more reasonable to require a sufficient threshold of nongermane activity to prove any associational violation. *Crowe*, 989 F.3d at 729.

In sum, the District Court followed this Court's remand instructions and appropriately considered: (1) "whether *Janus* supplies the appropriate standard for [Appellants'] free association claim"—it does not; (2) "whether *Keller*'s instructions

with regards to germaneness . . . are even relevant to the free association inquiry"—they are; and (3) "whether the First Amendment tolerates mandatory membership itself—independent of compelled financial support—in an integrated bar that engages in nongermane political activities"—it does. *See Crowe*, 989 F.3d at 729. Because the District Court correctly analyzed and applied the relevant standards for Appellants' remaining free association claim, this Court should affirm its decision.

## II. The District Court correctly held that Appellants failed to establish any nongermane activity by the OSB that violated their associational rights.

The District Court correctly applied the *Keller* standard in granting summary judgment to the OSB. First, the District Court correctly held that all of the OSB's challenged legislative activity was germane under *Keller* because it serves the compelling state interests in regulating the practice of law and improving the quality of legal services. Second, the District Court correctly held that the OSB Statement was germane under that same standard. Finally, as to the Affinity Bar Statement, the District Court erred in finding an issue of fact on germaneness (because the Affinity Bar Statement was also germane as a matter of law), but it correctly granted summary judgment for the OSB because, even if nongermane, the OSB's publication of the Affinity Bar Statement is such a minor part of the OSB's activities that it does not violate Appellants' freedom of association as a matter of law.

///

## A.    The District Court correctly concluded that all of the OSB's legislative activity was germane.

The District Court properly applied *Keller* in holding that all seventeen instances of legislative activity challenged by Appellants were germane and this Court should affirm that decision for three separate reasons.

First, as a threshold issue, more than half of the challenged activities did not (and could not) violate Appellants' associational rights as a matter of law because they were undertaken by individual voluntary bar sections—not the OSB itself—or the OSB never even engaged in advocacy on the challenged bill.[3] Specifically, Appellants challenge seventeen acts of legislative advocacy by the OSB between 2018 and 2021 that they contend were nongermane and infringed upon their associational rights. (*See supra* 9–12.) However, nine of those legislative activities—SB 182 (2021), SB 181 (2021), SB 183 (2021), SB 185 (2021), SB 829 (2021), SB 359 (2019), SB 360 (2019), SB 361 (2019), and HB 2459 (2019)—were undertaken by specific volunteer sections, not the OSB itself. (*See* SER 32–36.) As

---

[3] The OSB recognizes that under *McDonald*, legislative activity by a voluntary section may "have the imprimatur of the entire Bar" when the voluntary sections must obtain permission from the integrated bar before asserting any position on legislative matters and the bar uses mandatory dues to fund those sections. 4 F.4th at 248–49. However, this Court directed Appellants to establish an associational claim "independent of compelled financial support," which is distinct from *McDonald. See Crowe*, 989 F.3d at 720. Nevertheless, this Court may affirm the District Court's decision without reaching this issue because it conducted a full review of all legislative activities challenged by Appellants (including the activities by the voluntary sections) and correctly held that they were germane. (1-ER-11.)

Crowe admitted at deposition, those bar sections are entirely voluntary and do not speak on behalf of the OSB itself. (2-ER-109–11.) Thus, because Appellants failed to submit any evidence showing that they were associated with any of those non-OSB legislative activities, this Court should find that Appellants failed to establish any violation of their associational rights with respect to those activities regardless of germaneness.

Second, for one of the challenged activities relating to HB 4010 (2018), the unrebutted evidence showed that the OSB did not even engage in legislative advocacy in support of that bill. (SER 37.) Accordingly, because Appellants also failed to submit any evidence showing any actual legislative advocacy with respect to the challenged bill, this Court should also find that Appellants failed to establish any violation of their associational rights with respect to that bill.

Third, for the remaining seven instances of legislative advocacy challenged by Appellants, the District Court correctly held that they were germane and "within the spectrum of improving the quality of legal services or regulating the legal profession." (1-ER-11.) As the District Court explained, the permissible goals of "regulating the legal profession and improving the quality of legal services is a spectrum and not easy to delineate," but includes "acting essentially as professional advisers to those ultimately charged with the regulation of the legal profession." (1-ER-8 (citing *Keller*, 496 U.S. at 14–15).) Those permissible goals include

"supporting the judiciary, improving the administration of justice, or advancing a fair, inclusive, and accessible justice system," as well as "enhance[ing] public trust in the judicial system and associated attorney services" and "promot[ing] the important role of the [bar's] attorney members in using their professional skills to interpret and advise on pending legislation." (*Id.* (citing *Schell*, 11 F.4th at 1193).) The District Court therefore correctly held that each challenged legislative activity— even those not made by the OSB itself—were germane to the compelling interests of improving the quality of legal services or regulating the legal profession under *Keller*.

For example, of the seven bills for which the OSB directly advocated, the District Court correctly held that each bill served a germane purpose because each bill related to the "regulation of the profession or support [of] the administration of justice" or to "improving the quality of legal services through removing technical problems or malpractice traps or improv[ing] access to justice in Oregon." (1-ER-11, 31.) Specifically, the OSB supported legislation that directly related to the governance of the OSB and the practice of law, or legislation that directly related to supporting the judiciary and the public's access to the judicial system. (*See* SER 32–35, 37.) Supporting SB 180 (2021) was germane to regulating the legal profession because it clarified when attorneys for insurers may speak to directly to claimants, directly affecting the ethical rules governing attorneys. (SER-32 ¶ 10.) Supporting

SB 768 (2021) was germane to regulating the legal profession because it modified the rules governing the OSB, the entity responsible for regulating the legal profession. (SER-33 ¶ 13.) Supporting SB 358 (2019) was germane to regulating the legal profession because it clarified provisions relating to data sharing between the Department of Revenue and the OSB when a bar member is suspected of failing to file a required report, directly affecting how the OSB regulates attorneys. (SER-33–34 ¶ 14.) Supporting SB 295 (2021) was germane to increasing the public's access to the judicial system because it added clarity to when and how a defendant may be referred to the Oregon State Hospital, thereby increasing access to resources to restore competency and access the justice system. (SER-35 ¶ 20.) Supporting SB 297 (2021) was germane to supporting the judiciary because it related to benefits available to judicial marshals, thereby allowing the judiciary to retain qualified marshals and ensuring adequate court staff. (SER-34 ¶ 15.) Supporting SB 513 (2021) was germane to supporting public access to the justice system because by increasing high school students' civics education requirements, it encouraged the public to know their rights and how to access justice through the court system. (SER-34 ¶ 16.) And supporting HB 4008 (2018) was germane to supporting the judiciary and increasing public access to the judicial system by prohibiting courts from considering race or ethnicity in calculating future earning capacity of a person

in a civil action, thereby increasing the confidence of underrepresented communities that they could be made fully whole by the justice system. (SER-34 ¶ 25.)

Similarly, the voluntary sections of the OSB supported legislation that sought to remove confusion for attorneys and the courts that directly improved the quality of legal services in Oregon. Specifically, the voluntary sections supported bills that provided guidance with respect to destroying wills and obtaining power of attorney in ongoing divorce proceedings (SB 182 (2021)), increased access to justice for pro bono representation and enforcement of tribal court orders (SB 181 (2021) and SB 183 (2021)), removed a mistake and simplified the nonprofit corporations code (SB 185 (2021) and SB 360 (2019)), clarified a drafting error in the law for foreclosure proceedings (SB 829 (2021)), clarified the law with respect to shareholder actions and trustees (SB 359 (2019) and SB 361 (2019)), and removed confusion for attorneys handling lienholder requests (HB 2459 (2019)). (*See* SER 32–36.) As the District Court correctly held, each of those activities fell within the spectrum of permissible activities under *Keller* because they reasonably relate to improving the quality of legal services in Oregon or regulating the legal profession. *See Lathrop*, 367 U.S. at 843 (holding that the state bar's legislative activity did not impinge upon protected rights of association where the activity served the purpose of "elevating the educational and ethical standards of the Bar to the end of improving the quality of the legal service available to the people of the State").

Appellants now argue (for the first time) that the OSB's Legislative Policy is unconstitutional on its face because it allows the OSB to "weigh in on *any* law, regulation, or public policy matter in Oregon" and that the OSB's legislative activity included lobbying for substantive changes in the law. (Opening Br. at 31–32.) Appellants are incorrect on the law and the facts.

First, Appellants previously conceded that the OSB's Legislative Policy is facially constitutional and tailored to germane conduct. (*See* SER 76–77.) Appellants may not contradict that admission on appeal. *See Pye v. Mitchell*, 574 F.2d 476, 480 (9th Cir. 1978) ("Where an issue is conceded below, it cannot be raised for the first time on appeal.").

Second, even under *McDonald*, which Appellants rely upon, the Fifth Circuit rejected the argument that all legislative lobbying is nongermane, and expressly recognized that the Supreme Court allows a bar association to engage in lobbying related to the state court system, attorney compensation, "other matters related to the legal profession," or when "officials and members of the Bar are acting essentially as professional advisers to those ultimately charged with the regulation of the legal profession." 4 F.4th at 247. The *McDonald* court explained that lobbying is nongermane only when it "has nothing to do with regulating the legal profession or improving the quality of legal services" and is solely directed "at changing the law." *Id.* at 247–48. In addition, the *McDonald* court recognized that germane purposes

include "creating a fair and equal legal profession for minority . . . attorneys" and "help[ing] to build and maintain the public's trust in the legal profession . . . which is an improvement in the quality of legal services." *Id.* at 249 (cleaned up). Thus, the District Court did not err in concluding that the OSB's legislative advocacy, which was intended to support the judiciary, improve the administration of justice, and advance a fair, inclusive, and accessible justice system, was germane. Appellants failed to submit any evidence rebutting those permissible purposes. Accordingly, Appellants failed to meet their burden and this Court should affirm the District Court's holding that each legislative activity is germane.

**B.     The District Court correctly concluded that the OSB's publication of the OSB Statement was germane.**

The District Court also correctly held that the OSB Statement condemning white nationalism was germane and did not violate Appellants' freedom of association. Appellants do not seriously dispute that the OSB Statement on its own is germane. (*See* Opening Br. at 29–30.) The OSB Statement reaffirmed the OSB's commitment "to focus specifically on those issues that are directly within [its] mission, including the promotion of access to justice, the rule of law, and a healthy and functional judicial system that equitably serves everyone." (3-ER-350.) The OSB Statement also condemned "the current climate of violence, extremism and exclusion" and recognized the "courageous work done by specialty bars throughout the state." (*Id.*)

As the District Court correctly held, the OSB Statement "emphasizes the rule of law, the equal protection of the laws, and the importance of a justice system that is accessible to all and does not include racial discrimination or the acceptability of violence." (1-ER-12.) That is germane as a matter of law. For example, even under *McDonald*, the court explained that promoting access to justice serves the germane purpose of regulating the legal profession through "creating a fair and equal legal profession for minority . . . attorneys" and "help[ing] to build and maintain the public's trust in the legal profession . . . which is an improvement in the quality of legal services." *McDonald*, 4 F.4th at 249 (cleaned up). As the Fifth Circuit explained, "[t]he germaneness test does not require that there be unanimity on the Bar's position," that all statements be apolitical, or that a bar association may never take positions on "sensitive political topic[s]." *Id.* Rather, even though some members may find a topic "highly ideologically charged," that topic can still be germanely addressed by a bar association where it serves the compelling state interests justifying the existence and necessity of the bar. *See id.*; *Keller*, 496 U.S. at 15–16 (explaining that "activities having political or ideological coloration" are germane where they are "reasonably related to the advancement of [permissible] goals").

Here, the undisputed record evidence established that the OSB authored and published the OSB Statement to "advance a fair and inclusive legal profession" and

to "increase public trust for lawyers, the legal profession, the judiciary, and the judicial system as a whole," which are both crucial parts of the OSB's mission and constitutional under *Keller*. (SER-182 ¶ 6.) As a result, the District Court did not err in finding the OSB Statement germane and this Court should affirm that decision.

### C. The District Court erred in finding an issue of fact on germaneness with respect to the Affinity Bar Statement, but correctly concluded that even if nongermane it was *de minimis* under *Lathrop*.

With respect to the Affinity Bar Statement, the District Court correctly granted summary judgment to the OSB but erred in finding that an issue of fact existed as to the germaneness of that statement. However, even if this Court also finds an issue of fact with respect to the germaneness of the Affinity Bar Statement, this Court may affirm the District Court because that sole potentially nongermane act is insufficient to establish an associational violation as a matter of law.

First, as a threshold matter, this Court should conclude as a matter of law that the OSB's publishing of the Affinity Bar Statement—which is not attributed to the OSB—is not associated with Appellants or their membership in the OSB and therefore cannot provide an associational injury. The plain text of Affinity Bar Statement clearly expresses that it is the opinion of seven affinity bar associations, not the OSB. (3-ER-351.) Appellants acknowledge that the Affinity Bar Statement is expressly "separate" from the OSB statement, but argue that the statements cannot be viewed as "two separate statements" because the "shared border" of the

statements on "facing pages" "inform a reader about what OSB was *really* saying." (*See* Opening Br. at 30 (emphasis in original).) Appellants are wrong. The decorative formatting of a border and Appellants' speculation about the OSB's intent do not change the clear language attributing authorship and association only to the affinity bars. Appellants never submitted evidence of any association with the affinity bar associations, and therefore Appellants cannot rely on the Affinity Bar Statement to establish a First Amendment violation as a matter of law.

Second, contrary to the District Court's finding, this Court should conclude as a matter of law that the Affinity Bar Statement was germane for the same reasons that the OSB Statement was germane. The Affinity Bar Statement, like the OSB Statement, condemned race-based violence and confirmed the affinity bars' "commitment to the vision of a justice system that operates without discrimination and is fully accessible to all Oregonians." (3-ER-351.) Those statements are undisputedly aimed at "creating a fair and equal legal profession for minority . . . attorneys" and "help[ing] to build and maintain the public's trust in the legal profession," which are permissible purposes to improve the quality of legal services. *See McDonald*, 4 F.4th at 249.

Unlike the OSB Statement, however, the Affinity Bar Statement referenced then-President Donald Trump and stated that he "catered to [the] white nationalist movement, allowing it to make up the base of his support and providing it a false

sense of legitimacy." (3-ER-351.) Appellants argue that this political reference renders the statement nongermane because it "gratuitously inject[s] OSB (and its members) into a highly charged political debate." (Opening Br. at 29–30.) Not so. Although Appellants may believe that condemning racism is "political" or "gratuitous," the unrebutted evidence established that the OSB's intent in publishing the Affinity Bar Statement was consistent with the constitutional aims of supporting diversity in the legal community and emphasizing the rule of law, and was therefore germane. (*See* SER-182 ¶ 6.)

However, even if the Affinity Bar Statement is deemed nongermane (which the District Court never determined), the District Court correctly held that the OSB's publishing of the Affinity Bar Statement did not meaningfully infringe on Appellants' freedom of association. (1-ER-12–13.) As set forth above, the District Court correctly relied on *Lathrop* in holding that "whatever [the acceptable threshold for nongermane activity] may be, a single statement (or even two statements) will not meet it." (*Id.*) Accordingly, the District Court did not err in granting summary judgment for the OSB and this Court should affirm that decision.

## III. The District Court also did not err in granting summary judgment because Appellants failed to demonstrate any associational harm.

Appellants' free association claim also fails for the independent reason that no record evidence establishes that the OSB's activities actually impaired Appellants' freedom to associate with their preferred views. Thus, because this

41

Court may affirm the granting of summary judgment on any ground supported by the record, *Cruz*, 910 F.3d at 1270, it should affirm the District Court's decision because Appellants failed to meet their evidentiary burden to show they were actually harmed by any of the conduct at issue.

The rights provided under the First Amendment include the freedom to associate and to not associate with certain viewpoints. *Roberts*, 468 U.S. at 623. Where compelled association does not "affect[] in a significant way the [complaining party's] ability to advocate public and private viewpoints," there is no First Amendment injury. *Dale*, 530 U.S. at 648; *see also Roberts*, 468 U.S. at 626 (holding that the mandatory admission of women to a civic organization does not violate the First Amendment where it places no "serious burdens on the male members' freedom of expressive association"). For example, to establish an associational injury, courts require evidence that the forced association would significantly hamper a message that the plaintiff wanted to express. *See, e.g.*, *Dale*, 530 U.S. at 651–56 (determining, based on record evidence, that the Boy Scouts have an expressive message disapproving of homosexual conduct and that allowing a "gay rights activist," who is "open and honest about [his] sexual orientation," to serve as a scoutmaster would hamper this message); *Roberts*, 468 U.S. at 627 (focusing on the substance of the Jaycees' expression in determining that the inclusion of women in the Jaycees "requires no change in the Jaycees' creed of

promoting the interests of young men"); *cf. Green v. Miss USA, LLC*, 52 F.4th 773, 782–90, 805–06 (9th Cir. 2022) (concurrence) (concluding based on record evidence that Miss USA has an expressive message of celebrating "biological women," whereas plaintiff—a trans woman—advances a message of "bringing attention to the issues [the LGBTQ community] face[s]"). Appellants, however, failed to present any evidence of a similar associational injury at summary judgment, and therefore the District Court correctly granted summary judgment for the OSB.

### A. Appellants presented no record evidence that their compelled membership in the OSB caused any person to associate them with the OSB's activities.

The District Court properly granted summary judgment to the OSB because no record evidence exists that anyone associated the challenged OSB activities with Appellants. Appellants instead argue that their associational "injuries" consist of "being forced to associate with [the] OSB and all its activities" when they do "not want to associate with [the] OSB when it engages in conduct that is not germane to the practice of law." (Opening Br. at 15–16.) No record evidence supports Appellants' argument.

For example, the OSB Statement was signed by three Board of Governors members, the OSB's Director of Diversity and Inclusion, the OSB's CEO, and the Chairperson of the Advisory Committee on Diversity and Inclusion. (3-ER-350.) The OSB Statement did not provide that it reflected the viewpoints of all bar

members, and instead specifically acknowledged that "[a]s a unified bar we are mindful of the breadth of perspectives encompassed in [the OSB's] membership." (*Id.*) Similarly, the Affinity Bar Statement was not attributed to the OSB at all, but was written and signed by representatives of seven affinity bar associations. (3-ER-351.) Appellants never identified any evidence showing that anyone associated them with the OSB Statement or the Affinity Bar Statement.

In addition, Appellants failed to adduce any evidence at summary judgment showing that they were associated with the challenged legislative advocacy by the OSB or the voluntary bar sections for which they were not members. Appellants never even presented evidence that they in fact disagreed with the viewpoints presented in any of the challenged legislative policies. Indeed, the majority of the challenged legislative activity occurred after 2019, the last legislative session in which Appellants actively practiced law in Oregon. (*See* SER-32–35.) Accordingly, unlike the forced association at issue in *Dale* and *Roberts*, the OSB "do[es] not compel the plaintiff[s] to associate with anyone," they are "free to attend or not attend its meetings or vote in its elections as [they] choose[]." *See Lathrop*, 367 U.S. at 828. Thus, because Appellants failed to adduce any evidence that any person associated Appellants with the messages expressed in the OSB's challenged activities, their claim fails for lack of evidence of any actual associational injury.

To the extent Appellants now argue that their associational injury is based on their "compulsory annual financial support" for the OSB, this Court already foreclosed that argument. (*See* Opening Br. at 23–24.) In the prior appeal, this Court required Appellants to present a viable compelled association claim "independent of compelled financial support" in the OSB. *Crowe*, 989 F.3d at 729. Thus, because the only record evidence of association between Appellants and the OSB arises from Appellants' mandatory bar fees—which this Court held to be legally irrelevant for Appellants' associational claim—Appellants failed to establish an associational injury and the District Court properly granted summary judgment to the OSB.

## B. Appellants presented no record evidence that their compelled membership in the OSB prevented them from expressing their own opinions.

Appellants also failed to prove any associational injury because they did not present any evidence showing that the OSB's challenged actions severely intruded on their ability to express their own message. When analyzing whether forced association "significantly affects" a party's expressive rights, the Supreme Court focuses on whether the conduct severely intrudes on the complaining party's dissemination of their own expressive message. *See Dale*, 530 U.S. at 648, 655–56 (noting the forced membership must "affect[] in a significant way the group's ability to advocate public or private viewpoints); *Roberts*, 468 U.S. at 627 (determining that compelled association with women did not "impede the organization's ability to . . .

disseminate its preferred views"). In other words, Appellants needed to show that being a member of the OSB impaired their ability to express some message—independent of their membership fees. Appellants failed to present any evidence of that severe intrusion to establish a constitutional injury. Appellants presented no record evidence that the OSB compelled Appellants to say something with which they disagreed, forced them to attend an event to which they objected, or claimed to be speaking with Appellants' support. Indeed, this Court previously held that OSB membership does not compel or require bar members to "express any particular ideas or make any particular utterances of any kind." *See Morrow*, 188 F.3d at 1176.[4] As a result, Appellants failed to prove that the OSB's challenged activities impaired their ability to disseminate their preferred viewpoints, and the District Court properly granted summary judgment to the OSB.

## **CONCLUSION**

For the reasons stated herein, this Court should affirm the District Court's Order granting summary judgment to OSB and denying summary judgment to Appellants.

///

---

[4] Justice Whittaker's concurrence in *Lathrop* aptly summarized Appellants' problem: despite claiming an injury to their freedom of association, Appellants' objection to mandatory bar fees "is really all that is involved here." *Lathrop*, 367 U.S. at 865 (Whittaker, J., concurring).

Dated: October 20, 2023

Respectfully submitted,

HOLLAND & KNIGHT LLP


 s/ Kristin M. Asai

Kristin M. Asai
Paul Matthias-Bennetch
Abigail Gore
Holland & Knight LLP
601 SW Second Avenue, Suite 1800
Portland, OR 97204
Telephone: (503) 243-2300
Fax: (503) 241-8014
kristin.asai@hklaw.com

*Attorneys for Defendant-Appellee*

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, Appellees notify the Court that they are not aware of any related cases other than the *Gruber* matter identified by Appellants.

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C) and Ninth Circuit Rule 32-1, I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 10,613 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Times New Roman 14-point font.

HOLLAND & KNIGHT LLP


By: *s/ Kristin M. Asai*
  Kristin M. Asai
  Kristin.Asai@hklaw.com

  *Attorney for Defendants-Appellees*

## CERTIFICATE OF SERVICE

I hereby certify that on October 20, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF.

HOLLAND & KNIGHT LLP


By: *s/ Kristin M. Asai*
    Kristin M. Asai
    Kristin.Asai@hklaw.com

*Attorney for Defendants-Appellees*

IN THE

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

▶▶◀◀

DANIEL Z. CROWE; and OREGON CIVIL LIBERTIES ATTORNEYS,

*Plaintiffs-Appellants*,

v.

OREGON STATE BAR, *et al.*,

*Defendants-Appellees*.

*On Appeal From The United States District Court for the District of Oregon*
*Hon. Michael H. Simon, District Judge*
*Case No. 3:18-cv-02139-JR*

## APPELLEES' ADDENDUM

Kristin M. Asai
Paul Matthias-Bennetch
Abigail Gore
Holland & Knight LLP
601 SW Second Avenue, Suite 1800
Portland, OR 97204
Telephone: (503) 243-2300

*Attorneys for Defendants-Appellees*

October 20, 2023

# TABLE OF CONTENTS

28 U.S.C. § 1291 ................................................................................52

28 U.S.C. § 1331 ................................................................................52

ORS 9.005 ..........................................................................................52

ORS 9.006 ..........................................................................................53

ORS 9.010 ..........................................................................................53

ORS 9.080 ..........................................................................................54

ORS 9.112 ..........................................................................................56

ORS 9.160 ..........................................................................................56

ORS 9.191 ..........................................................................................59

ORS 9.200 ..........................................................................................59

ORS 9.210 ..........................................................................................60

ORS 9.490 ..........................................................................................60

## 28 U.S.C. § 1291 Final decisions of district courts

The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court. The jurisdiction of the United States Court of Appeals for the Federal Circuit shall be limited to the jurisdiction described in sections 1292(c) and (d) and 1295 of this title.

## 28 U.S.C. § 1331 Federal question

The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

## O.R.S. § 9.005. Definitions

As used in ORS 9.005 to 9.757, unless the context or subject matter requires otherwise:

(1) "Attorney" and "member" mean a member of the bar.

(2) "Board" and "board of governors" mean the board of governors of the bar.

(3) "Delegate" means a delegate of the house of delegates of the Oregon State Bar.

(4) "Governor" means a member of the board of governors of the bar.

(5) "House" and "house of delegates" mean the house of delegates of the Oregon State Bar.

(6) "Oregon State Bar," "state bar" and "bar" mean the Oregon State Bar created by the State Bar Act set forth in ORS 9.005 to 9.757.

(7) "Rules of procedure" means the rules of procedure relative to admission, discipline, resignation and reinstatement of members of the bar adopted by the board and approved by the Supreme Court.

## O.R.S. § 9.006. Supreme Court adoption of rules for operation of courts

Nothing in ORS 9.005 to 9.757 affects the inherent authority of the Supreme Court to adopt rules for the operation of the courts, including any rules relating to the regulation of the practice of law, that are deemed necessary by the court.

## O.R.S. § 9.010. Attorneys deemed officers of court; statutes applicable to Oregon State Bar

(1) An attorney, admitted to practice in this state, is an officer of the court.

(2) The Oregon State Bar is a public corporation and an instrumentality of the Judicial Department of the government of the State of Oregon. The bar is authorized to carry out the provisions of ORS 9.005 to 9.757.

(3) The bar is subject to the following statutes applicable to public bodies:

(a) ORS 30.210 to 30.250.

(b) ORS 30.260 to 30.300.

(c) ORS 30.310, 30.312, 30.390 and 30.400.

(d) The Oregon Rules of Civil Procedure.

(e) ORS 192.311 to 192.478.

(f) ORS 192.610 to 192.690.

(g) ORS 243.401 to 243.507.

(h) ORS 244.010 to 244.040.

(i) ORS 297.110 to 297.230.

(j) ORS chapters 307, 308 and 311.

(k) ORS 731.036 and 737.600.

(4) Except as provided in subsection (3) of this section, the bar is not subject to any statute applicable to a state agency, department, board or commission or public body unless the statute expressly provides that it is applicable to the Oregon State Bar.

(5) The Oregon State Bar has perpetual succession and a seal, and may sue and be sued. Notwithstanding the provisions of ORS 270.020 and 279.835 to 279.855 and ORS chapters 278, 279A, 279B and 279C, the bar may, in its own name, for the purpose of carrying into effect and promoting its objectives, enter into contracts and lease, acquire, hold, own, encumber, insure, sell, replace, deal in and with and dispose of real and personal property.

(6) No obligation of any kind incurred or created under this section shall be, or be considered, an indebtedness or obligation of the State of Oregon.

## O.R.S. § 9.080. Duties of board; professional liability fund; quorum

(1) The state bar shall be governed by the board of governors, except as provided in ORS 9.136 to 9.155. The state bar has the authority to adopt, alter, amend and repeal bylaws and to adopt new bylaws containing provisions for the regulation and management of the affairs of the state bar not inconsistent with law. The board is charged with the executive functions of the state bar and shall at all times direct its power to serve the public interest by:

(a) Regulating the legal profession and improving the quality of legal services;

(b) Supporting the judiciary and improving the administration of justice; and

(c) Advancing a fair, inclusive and accessible justice system.

(2)(a)(A) The board has the authority to require all active members of the state bar engaged in the private practice of law whose principal offices are in Oregon to carry professional liability insurance and is empowered, either by itself or in conjunction with other bar organizations, to do whatever is necessary and convenient to implement this provision, including the authority to own, organize and sponsor any insurance organization authorized under the laws of the State of Oregon and to establish a lawyer's professional liability fund. This fund shall pay, on behalf of active members of the state bar engaged in the private practice of law whose principal offices are in Oregon, all sums as may be provided under such plan which any such member shall become legally obligated to pay as money damages because of any claim made against such member as a result of any act or omission of such member in rendering or failing to render professional services for others in the member's capacity as an attorney or caused by any other person for whose acts or omissions the member is legally responsible.

(B) The board has the authority to assess each active member of the state bar engaged in the private practice of law whose principal office is in Oregon for

contributions to the professional liability fund and to establish the date by which contributions must be made.

(C) The board has the authority to establish definitions of coverage to be provided by the professional liability fund and to retain or employ legal counsel to represent the fund and defend and control the defense against any covered claim made against the member.

(D) The board has the authority to offer optional professional liability coverage on an underwritten basis above the minimum required coverage limits provided under the professional liability fund, either through the fund, through a separate fund or through any insurance organization authorized under the laws of the State of Oregon, and may do whatever is necessary and convenient to implement this provision. Any fund so established shall not be subject to the Insurance Code of the State of Oregon.

(E) Records of a claim against the professional liability fund are exempt from disclosure under ORS 192.311 to 192.478.

(b) For purposes of paragraph (a) of this subsection, an attorney is not engaged in the private practice of law if the attorney is a full-time employee of a corporation other than a corporation incorporated under ORS chapter 58, the state, an agency or department thereof, a county, city, special district or any other public or municipal corporation or any instrumentality thereof. However, an attorney who practices law outside of the attorney's full-time employment is engaged in the private practice of law.

(c) For the purposes of paragraph (a) of this subsection, the principal office of an attorney is considered to be the location where the attorney engages in the private practice of law more than 50 percent of the time engaged in that practice. In the case of an attorney in a branch office outside Oregon and the main office to which the branch office is connected is in Oregon, the principal office of the attorney is not considered to be in Oregon unless the attorney engages in the private practice of law in Oregon more than 50 percent of the time engaged in the private practice of law.

(3) The board may appoint such committees, officers and employees as it deems necessary or proper and fix and pay their compensation and necessary expenses. At any meeting of the board, two-thirds of the total number of members then in office shall constitute a quorum. It shall promote and encourage voluntary county or other local bar associations.

(4) Except as provided in this subsection, an employee of the state bar shall not be considered an "employee" as the term is defined in the public employees' retirement laws. However, an employee of the state bar may, at the option of the employee, for the purpose of becoming a member of the Public Employees Retirement System, be considered an "employee" as the term is defined in the public employees' retirement laws. The option, once exercised by written notification directed to the Public Employees Retirement Board, may not be revoked subsequently, except as may otherwise be provided by law. Upon receipt of such notification by the Public Employees Retirement Board, an employee of the state bar who would otherwise, but for the exemption provided in this subsection, be considered an "employee," as the term is defined in the public employees' retirement laws, shall be so considered. The state bar and its employees shall be exempt from the provisions of the State Personnel Relations Law. No member of the state bar shall be considered an "employee" as the term is defined in the public employees' retirement laws, the unemployment compensation laws and the State Personnel Relations Law solely by reason of membership in the state bar.

## O.R.S. § 9.112. Minimum continuing legal education requirements

The board of governors shall by rule establish minimum continuing legal education requirements for all active members of the Oregon State Bar. Rules adopted by the board of governors are subject to review by the Supreme Court.

## O.R.S. § 9.160. Practice of law by persons other than active members prohibited

(1) Except as provided in this section, a person may not practice law in this state, or represent that the person is qualified to practice law in this state, unless the person is an active member of the Oregon State Bar.

(2) Subsection (1) of this section does not affect the right to prosecute or defend a cause in person as provided in ORS 9.320.

(3) Any employee or volunteer of the Judicial Department acting with the authorization and direction of the Chief Justice or a presiding judge of a circuit court to provide assistance to members of the public with court processes, selecting and completing court forms and legal information is not engaged in the practice of law in violation of subsection (1) of this section.

(4) An individual licensed under ORS 696.022 acting in the scope of the individual's license to arrange a real estate transaction, including the sale, purchase, exchange, option or lease coupled with an option to purchase, lease for a term of

one year or longer or rental of real property, is not engaged in the practice of law in this state in violation of subsection (1) of this section.

(5) A title insurer authorized to do business in this state, a title insurance agent licensed under the laws of this state or an escrow agent licensed under the laws of this state is not engaged in the practice of law in this state in violation of subsection (1) of this section if, for the purposes of a transaction in which the insurer or agent provides title insurance or escrow services, the insurer or agent:

(a) Prepares any satisfaction, reconveyance, release, discharge, termination or cancellation of a lien, encumbrance or obligation;

(b) Acts pursuant to the instructions of the principals to the transaction as scrivener to fill in blanks in any document selected by the principals;

(c) Presents to the principals to the transaction for their selection any blank form prescribed by statute, rule, ordinance or other law; or

(d) Presents to the principals to the transaction for their selection a blank form prepared or approved by a lawyer licensed to practice law in this state for one or more of the following:

(A) A mortgage.

(B) A trust deed.

(C) A promissory note.

(D) An assignment of a mortgagee's interest under a mortgage.

(E) An assignment of a beneficial interest under a trust deed.

(F) An assignment of a seller's or buyer's interest under a land sale contract.

(G) A power of attorney.

(H) A subordination agreement.

(I) A memorandum of an instrument that is to be recorded in place of the instrument that is the subject of the memorandum.

(6) In performing the services permitted in subsection (5) of this section, a title insurer, a title insurance agent or an escrow agent may not draft, select or give

advice regarding any real estate document if those activities require the exercise of informed or trained discretion.

(7) The exemption provided by subsection (5) of this section does not apply to any acts relating to a document or form that are performed by an escrow agent under subsection (5)(b), (c) or (d) of this section unless the escrow agent provides to the principals to the transaction a notice in at least 12-point type as follows:

YOU WILL BE REVIEWING, APPROVING AND SIGNING IMPORTANT DOCUMENTS AT CLOSING. LEGAL CONSEQUENCES FOLLOW FROM THE SELECTION AND USE OF THESE DOCUMENTS. THESE CONSEQUENCES AFFECT YOUR RIGHTS AND OBLIGATIONS. YOU MAY CONSULT AN ATTORNEY ABOUT THESE DOCUMENTS. YOU SHOULD CONSULT AN ATTORNEY IF YOU HAVE QUESTIONS OR CONCERNS ABOUT THE TRANSACTION OR ABOUT THE DOCUMENTS. IF YOU WISH TO REVIEW TRANSACTION DOCUMENTS THAT YOU HAVE NOT YET SEEN, PLEASE CONTACT THE ESCROW AGENT.

(8) The exemption provided by subsection (5) of this section does not apply to any acts relating to a document or form that are performed by an escrow agent under subsection (5)(b), (c) or (d) of this section for a real estate sale and purchase transaction in which all or part of the purchase price consists of deferred payments by the buyer to the seller unless the escrow agent provides to the principals to the transaction:

(a) A copy of any proposed instrument of conveyance between the buyer and seller to be used in the transaction;

(b) A copy of any proposed deferred payment security instrument between the buyer and seller to be used in the transaction; and

(c) A copy of any proposed promissory note or other evidence of indebtedness between the buyer and seller to be used in the transaction.

(9) The notice and copies of documents that must be provided under subsections (7) and (8) of this section must be delivered in the manner most likely to ensure receipt by the principals to the transaction at least three days before completion of the transaction. If copies of documents have been provided under subsection (8) of this section and are subsequently amended, copies of the amended documents must be provided before completion of the transaction.

(10) Failure of any person to comply with the requirements of subsections (4) to (9) of this section does not affect the validity of any transaction and may not be used as a basis to challenge any transaction.

## O.R.S. § 9.191. Annual fees; professional liability assessments

(1) Except as provided in subsection (2) of this section, the annual membership fees to be paid by members of the Oregon State Bar shall be established by the Board of Governors of the Oregon State Bar, and each year notice of the proposed fees for the coming year shall be published and distributed to the membership not later than 20 days before the annual meeting of the house of delegates. Any increase in annual membership fees over the amount established for the preceding year must be approved by a majority of delegates of the house of delegates voting thereon at the annual meeting of the house of delegates. The board shall establish the date by which annual membership fees must be paid.

(2) The board shall establish prorated membership fees payable for the year that a member is admitted to the practice of law in this state. If the new member is admitted on or before the date established by the board for the payment of annual membership fees under subsection (1) of this section, the new member must pay the full annual membership fees established under subsection (1) of this section.

(3) In establishing annual membership fees, the board shall consider and be guided by the anticipated financial needs of the state bar for the year for which the fees are established, time periods of membership and active or inactive status of members. Annual membership fees may include any amount assessed under any plan for professional liability insurance for active members engaged in the private practice of law whose principal offices are in Oregon as provided in ORS 9.080 (2).

## O.R.S. § 9.200. Failure to pay membership fees; reinstatement

(1) Any member in default in payment of membership fees established under ORS 9.191 (1) or any member in default in payment of assessed contributions to a professional liability fund established under ORS 9.080 (2) shall be given written notice of delinquency and a reasonable time to cure the default. The chief executive officer of the Oregon State Bar shall send the notice of delinquency to the member at the member's electronic mail address on file with the bar on the date of the notice. The chief executive officer shall send the notice by mail to any member who is not required to have an electronic mail address on file with the bar under the rules of procedure. If a member fails to pay the fees or contributions within the time allowed to cure the default as stated in the notice, the member is

automatically suspended. The chief executive officer shall provide the names of all members suspended under this section to the State Court Administrator and to each of the judges of the Court of Appeals, circuit and tax courts of the state.

(2) An active member delinquent in the payment of fees or contributions is not entitled to vote.

(3) A member delinquent in the payment of fees or contributions may be assessed a late payment penalty determined by the board of governors.

(4) A member suspended for delinquency under this section may be reinstated only on compliance with the rules of the Supreme Court and the rules of procedure and payment of all required fees or contributions.

## O.R.S. § 9.210. Board of bar examiners; duties; fees for admission to bar; confidentiality of applicant information

(1) The Supreme Court shall appoint a board of bar examiners to carry out the admissions functions of the Oregon State Bar as set forth in the bar bylaws and the rules of the Supreme Court. The composition of the board of bar examiners shall be as provided in the rules of the Supreme Court, but the board must include at least two public members.

(2) The board shall examine applicants, investigate applicants' character and fitness and recommend to the Supreme Court for admission to practice law those who fulfill the requirements prescribed by law and the rules of the Supreme Court.

(3) With the approval of the Supreme Court, the board may fix and collect fees to be paid by applicants for admission, which fees shall be paid into the treasury of the bar.

(4) Applications for admission and any other material pertaining to individual applicants are confidential and may be disclosed only as provided in the rules of the Supreme Court. The board's consideration of an individual applicant's qualifications is a judicial proceeding for purposes of ORS 192.610 to 192.690.

## O.R.S. § 9.490. Rules of professional conduct; sanctions for violation of rules

(1) The board of governors, with the approval of the house of delegates given at any regular or special meeting, shall formulate rules of professional conduct, and when such rules are adopted by the Supreme Court, shall have power to enforce the same. Such rules shall be binding upon all members of the bar.

(2) A court of this state may not order that evidence be suppressed or excluded in any criminal trial, grand jury proceeding or other criminal proceeding, or order that any criminal prosecution be dismissed, solely as a sanction or remedy for violation of a rule of professional conduct adopted by the Supreme Court.